UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

SEACORP, LLC,                        :
                                     :
            Plaintiff,               :   Civil Action
                                     :   No. 1:22-cv-01019-PTG-IDD
      v.                             :
                                     :
TITAN ONE ZERO, LLC,                 :   August 24, 2023
                                     :   11:15 a.m.
            et al.,                  :
                                     :
                                     :
                                     :
            Defendant.               :
                                     :
.............................  :


             TRANSCRIPT OF MOTION HEARING PROCEEDINGS
         BEFORE THE HONORABLE PATRICIA TOLLIVER GILES,
             UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

  For the Plaintiff:          **Todd Michael Reinecker, Esq.**
                              PilieroMazza PLLC
                              1001 G Street, NW
                              Suite 1100
                              Washington, DC 20001
                              202-857-1000
                              Fax: 202-857-0200
                              Email: Treinecker@pilieromazza.com

                              **Mansitan Sow, Esq.**
                              PilieroMazza PLLC
                              1001 G Street, NW
                              Suite 1100
                              Washington, DC 20001
                              646-894-4099
                              Fax: 202-857-0200
                              Email: Msow@pilieromazza.com

```
  APPEARANCES:  (Cont).


  For the Defendants:          Matthew Ross Keller, Esq.
                               Praemia Law, PLLC
                               11710 Plaza America Drive
                               Suite 2000
                               Reston, VA 20190
                               310-622-5774
                               Email:
                               Matthew.keller@praemialaw.com

                               Kristen Lynn Loesch, Esq.
                               Praemia Law, PLLC
                               11710 Plaza America Drive
                               Suite 2000
                               Reston, VA 20190
                               703-861-7295
                               Email:
                               Kristen.loesch@praemialaw.com

  Court Reporter:              Scott L. Wallace, RDR, RMR, CRR
                               Official Court Reporter
                               United States District Court
                               401 Courthouse Square
                               Alexandria, VA 22314-5798
                               Cell: 443-584-6558
                               Email: Scottwallace.edva@gmail.com


Proceedings reported by machine shorthand, transcript produced
by computer-aided transcription.
```

1              <u>**MORNING SESSION, AUGUST 24, 2023**</u>

2   (11:15 a.m.)

3        THE COURTROOM CLERK:  The Court calls *Seacorp, LLC versus*

4   *Titan One Zero, LLC, et al.*, Case Number 1:22-cv-1019.

5        May I have appearances, please, first for the plaintiff?

6        MS. SOW:  Good morning, Your Honor.  Mansitan Sow on

7   behalf of Seacorp.

8        THE COURT:  I'm sorry, could you repeat your name?  I

9   didn't get it.  People are loud today.

10       MS. SOW:  Mansitan Sow on behalf of plaintiff, and present

11  with me is my co-counsel, Todd Reinecker.

12       MR. REINECKER:  Good morning, Your Honor.

13       THE COURT:  Good morning.  Who will be arguing for you

14  this morning?

15       MS. SOW:  Mr. Reinecker, Your Honor.

16       MR. KELLER:  Matthew Keller for Titan One Zero.  I'll be

17  arguing, Your Honor.

18       MS. LOESCH:  Kristen Loesch for the plaintiff, Titan One

19  Zero.

20       THE COURT:  I'm sorry, I could not hear you at all, ma'am.

21       MS. LOESCH:  Kristen Loesch for Titan One Zero.

22       THE COURT:  And so, Mr. Keller, did you say you were

23  arguing today?

24       MR. KELLER:  Yes, Your Honor.

25       THE COURT:  And this is your motion?

```
 1          MR. KELLER:  Yes, Your Honor.

 2          THE COURT:  I'll hear from you first.

 3          MR. KELLER:  Good morning, Your Honor.  Matthew Keller.

 4     May it please the Court.  As I represented before, I represent

 5     Titan One Zero, the defendant, also the movant in this instant

 6     motion.

 7          Very briefly, I would like to introduce a few facts that

 8     are relevant to the various arguments throughout the summary

 9     judgment motion.

10          THE COURT:  And I will say is this, too.  I have read all

11     of your papers, the motion.  I was well-briefed on both sides,

12     and so you don't need to repeat everything that you said in your

13     papers.

14          MR. KELLER:  Thank you for that.  And certainly, as the

15     previous attorney noted, I like being direct.  It makes it much

16     easier and saves everyone a lot of time.

17          So, I will, rather than recite everything, I will

18     highlight some issues and also highlight a few issues that didn't

19     get a lot of attention during the written briefing, but I think

20     have developed in this case.

21          THE COURT:  Thank you.

22          MR. KELLER:  Okay.  Thank you.  But, a very brief

23     introduction on some basic facts.  The first basic fact here, of

24     course, is that Titan One Zero is the defendant in this case.

25     This is a case that Seacorp brought, and I use Seacorp as an
```

1    abbreviation.  So, perhaps you -- I'm sure you've noted in many

2    of our briefs that Systems Engineering Associates Corporation and

3    Seacorp -- I'll just keep it simple here -- are viewed by the

4    defendant as two separate entities, but, nonetheless, for the

5    simplicity of the matter, I'll refer to Seacorp when I'm talking

6    about either of those.

7         Seacorp and Titan One Zero had a subcontract.  It was

8    pursuant to a federal prime contract to do work for the United

9    States Navy.  And during performance of that contract, which

10   happens sometimes, the United States government directed Titan

11   One Zero to terminate the contract that the Navy had with --

12        THE COURT REPORTER:  Counsel, counsel, I can't hear you.

13   Keep your voice up, please.

14        MR. KELLER:  I'm sorry?

15        THE COURT REPORTER:  I didn't quite hear you.  Can you

16   keep your voice up a little bit?

17        MR. KELLER:  Certainly.  This is a mic right here,

18   correct?

19        THE COURT REPORTER:  It is, but it doesn't work as --

20        THE COURT:  It is, but with that mic, it goes to -- it

21   allows him to hear, but you still need to keep your volume up

22   overall.

23        MR. KELLER:  Absolutely.  Thank you.  As is not

24   necessarily every day, but as frequently happens, the United

25   States government terminated the contract, Titan One Zero then

1    subsequently asked its subcontractor, in this case again,

2    Seacorp, to terminate the contract that is at issue in this case,

3    which I'll refer to as the subcontract between Titan One Zero and

4    Seacorp.

5         At the time of the termination, which was in August 2021,

6    the two parties, that is, Titan One Zero and Seacorp, had only

7    really gotten through enough of the work of that subcontract

8    where only two milestones --

9         THE COURT:  Your Statement of Facts laid all of this out

10   very well.

11        MR. KELLER:  Moving on, then.  Thank you.  I will begin,

12   then, with the first material breach defense.  Titan One Zero

13   asserts that because Seacorp was the first party to materially

14   breach the contract, Titan One Zero is not obligated to do

15   anything, frankly, after the moment of that breach, which is the

16   first material breach case law in Virginia.

17        Frankly, this is a black-and-white issue.  The best

18   evidence of this issue is Ms. Goetz-Patridge's testimony.

19   Ms. Goetz-Patridge is the director of contracts at Seacorp, and

20   in her deposition she noted specifically that the subcontractor

21   is a party -- excuse me, is a person, someone, quote, "someone

22   that would provide us services".

23        Now, paragraph 18 of the subcontract specifically says

24   that neither -- quote, "neither party shall assign this

25   subcontract or any portion of the work to be performed hereunder

1   to any other person or entity without the express written consent

2   of the other party, and such consent shall not unreasonably be

3   withheld, and if the subcontractor agrees that it has not, it

4   will not issue any lower-tiered subcontracts to any other company

5   or person, including 1099s, for the performance of this

6   subcontract."

7        And, as I noted a moment ago, Ms. Goetz-Patridge, who is

8   the director of contracts, certainly has the authority to speak

9   to this issue.  I'll also note she was the individual at Seacorp

10  who signed the contract on behalf of Seacorp.  She specifically

11  defined a subcontractor as, again, quote, "someone that would

12  provide us services," end quote.

13       The issue here is services equal a subcontract, and that's

14  how she's --

15       THE COURT:  Even if I accepted your argument in terms of

16  what "services" mean, and that then turns RSS into a

17  subcontractor, isn't there still a genuine dispute as to whether

18  that constitutes a material breach of the subcontract?

19       MR. KELLER:  I'll go straight to the material breach,

20  then.  Thank you, Your Honor.  Material -- excuse me.

21  Materiality comes down to what is the basic essence of the

22  contract, and it's Titan One Zero's position that the services

23  that were provided by RSS in this case were the integration of

24  various equipment.  That is the essence of the contract that

25  Titan One Zero had with Seacorp.  If Titan One Zero had been

1   interested in engaging RSS to perform these services, it would

2   have done so.  It elected not to do that deliberately, and it was

3   contracting certainly with Seacorp understanding that Seacorp

4   would do all of that work itself.

5        The reason it's material -- there are a number of

6   different reasons.  One is a basic issue that comes up in federal

7   contracting a lot, which is a prime contractor has to understand

8   what a subcontractor is doing because the prime has made various

9   promises to the government regarding intellectual property for

10  example.  And if you get multiple layers of companies involved in

11  performing work on a subcontract, lower tiers, 1099s, a lot of

12  those individuals or companies may have an interest in having

13  access to or ownership of various intellectual property that in

14  this case Titan One Zero promised exclusively to the federal

15  government, and, in fact, Seacorp promised {indiscernible} to the

16  federal government.

17       But, again, getting to materiality, it can be an enormous

18  issue when the government begins {indiscernible} intellectual

19  property that was delivered under our contract, to then have

20  various other companies that jump in and really mix things up and

21  mess things up for that prime contractor.

22       But again, they promised, they promise that the government

23  would have intellectual property rights.  Another is quality

24  control.  Certainly, if Titan One Zero has an ability to exercise

25  some type of supervision over Seacorp's activities for quality

1    control purposes, of course, if Titan One Zero is unaware of what

2    anyone else is doing under that contract, it's not going to be

3    able to check the quality control and services provided by that

4    other company.

5         And so, those are two really important aspects of why in

6    this case this work was material and all services, including

7    material, as well.  I would also, of course, like to remind the

8    Court that the clause itself is a very clear statement of what's

9    important to the parties, and that clause specifically says

10   services shall be performed only by Seacorp in this case.

11        I would like to note one quick thing about the waiver

12   argument that's brought up by Seacorp, and it has to do with a

13   document that is in Exhibit J, and I'm going to just bring it up

14   here and briefly discuss that.

15        Really, the only defense or argument, anyway, that Seacorp

16   has proffered in this specific argument is, well, RSS sent an

17   invoice to Seacorp, and Seacorp then sent that along to Titan One

18   Zero, and that invoice itself or in this case, it's titled -- in

19   quotations at the top -- would be the second full page of Exhibit

20   J of the plaintiff's brief --

21        THE COURT:  -- I have that --

22        MR. KELLER:  Thank you -- of the exhibits.  The argument

23   is, because this quotation had been submitted to Titan One Zero,

24   that that somehow absolves Seacorp of this issue because now

25   Titan One Zero is on notice that Seacorp was going to have RSS do

1    a lot of subcontract work.

2          I'll first note that the fact that Ms. Goetz-Patridge and

3    Mr. Vetovis, who is also another senior person at Seacorp, they

4    both very strongly denied any services being provided by RSS, a

5    pretty strong indication that the company itself knew that that

6    was wrong, but also I'll just note and move on, Your Honor, that

7    on this quotation the description, first, is for an item number

8    itself.  That's a product, okay?

9          And then the description itself was, quote, "a Series 500

10   SCRR/STS," and then in parentheses it says, "configured" -- past

11   tense -- "to support ISR processing, acoustic processing, and

12   remove communication from data distribution" end parenthesis.

13   This is a past tense word here, "configured," and even if -- and

14   I'm not going to assume -- strike that.  I'm not going to

15   acknowledge that, but I'll assume it for the sake of this

16   argument, even assuming that Titan One Zero ever received this,

17   there's nothing about this description that indicates that there

18   would be ongoing services performed by RSS.

19         Instead, what it indicates is that RSS is going to deliver

20   two things that are configured in a particular way pursuant to an

21   item number.

22         Before moving on from this, I would also note, of course,

23   that any notice provided by an e-mail would not meet the waiver

24   requirements of the law, number one, but also the contract, which

25   again, specifies that consent to subcontracting is to be in

1    writing.

2         Moving on to the second issue, which is the presentment

3    and the condition -- I'll call it condition precedent presentment

4    issue.  This question has to do with how Clauses 15 and 16

5    interact in the contract.  Of course, the Court is recognized as

6    having expertise in interpreting contracts, so I will not belabor

7    this in any way, but what I would like to note is these clauses

8    stand for what they say.  Paragraph B of Clause 16, paragraph 16

9    specifically notes that Seacorp would have to present any sort of

10   claim within 20 days of its accrual.  If we look at the calendar,

11   that's 20 business days for the record.  There's really no way

12   that any of the communications that have been identified by Titan

13   One Zero or, in fact, by Seacorp could have met the requirement

14   of the 20-day presentment period.

15        And I would also like to note, before moving on to the

16   next topic, that again, going back to Ms. Goetz-Patridge, who is

17   again the director of contracts, signed the contract on behalf of

18   Seacorp.  She specifically stated in her deposition that she

19   understood that the stop work notice that was issued on the 5th

20   of August 2021 was essentially a termination for convenience.

21        So, the critical accrual date here would be the notice

22   that was received by Seacorp, and that would trigger whatever it

23   is that Seacorp wanted to present to --

24        THE COURT:  But there were two stop work orders issued in

25   this case, the first one and then where it started again, and

1    then there was a second one where work started again, correct?

2    And so, even with that deposition testimony, if there's a genuine

3    issue of when a claim actually accrued in this case.

4        There's also, in addition to her testimony, there's the

5    letter that was submitted by Titan on August 12th stating that it

6    was -- that it had been instructed to negotiate a conclusion of

7    the federal contract.

8        MR. KELLER:  Yes, Your Honor.  As Seacorp notes, there

9    were two stop work notices, and Seacorp notes properly that both,

10   extensions said the same thing, with a couple of dates that were

11   different.  The difference is the context.  And I think

12   Ms. Goetz-Patridge's testimony gets at that issue, the context

13   being with the first stop work -- well, strike that -- with the

14   second stop work, everyone, both parties and the government,

15   certainly recognized that the project was officially done and

16   there would be no additional work.

17       The initial first stop work notice from earlier in the

18   year had not come up at a time when the government was directing

19   that the parties stop working altogether.  It did come up under a

20   very different set of circumstances, which I do not believe made

21   it into the record here, so I won't get into any territory that I

22   don't want to get in trouble for, but it was a very different set

23   of circumstances.  And, as noted, the work started up pretty

24   quickly thereafter, and the parties continued working together.

25       The second stop work notice truly ended the contract.

```
1   Ms. Goetz-Patridge recognized that.  She stated that at her
2   deposition.  And I think the August 12th letter also adds to the
3   context when it notes -- I'm paraphrasing here -- we're done,
4   we're going to transition to try and get -- try to work with the
5   government to pay out Seacorp for any work that it may be
6   entitled to be paid for, but the contract really is done at this
7   time.  I think the August 12th letter really sells that, and --
8        THE COURT:  But it also makes it seem like it is
9   forthcoming, because it says that it's been instructed to work to
10  negotiate a conclusion.  That implies something that's coming in
11  the future, to work for something.
12       MR. KELLER:  Well, the working towards something is not
13  physical work on the contract.
14       THE COURT:  I didn't say it was for work on the contract,
15  but it's working to complete and wrap things up to a certain
16  extent.
17       MR. KELLER:  I think what that language recognizes or
18  represents, to find a better way to put it, is the fact that
19  there would be some discussions between the parties, and we're
20  back to this 20-day presentment period, there would be
21  discussions between the parties about whether Seacorp could
22  justify that Titan One Zero could or should be paid under this
23  contract, because from August 5th until certainly the 12th -- and
24  let's say for a week or two after that -- Titan One Zero was very
25  interested in seeing what it is that Seacorp could present to be
```

1    paid, invoices of some kind that explained what kind of work was

2    accomplished, what its value was, so that Titan One Zero could

3    then take that information to the United States government.  That

4    piece of it, the government paying what the government viewed to

5    be valuable or in some way worth something to the government,

6    isn't really ultimately part of this case because nothing that

7    Titan One Zero received from the government, after that second

8    milestone deliverable was made, ever ultimately made it to the

9    government.

10        So that isn't really a part of this negotiation, but on

11   August 12th that letter recognized that, yes, Titan One Zero,

12   we're going to look to you, we're going to look to the

13   government, we're going to try to work out what it is that,

14   perhaps, the government could pay through Titan One Zero to

15   Seacorp, if, in fact, it developed something of value.

16        If you will indulge me for just one moment, Your Honor, I

17   want to make sure I didn't miss something there.  Okay.  I'm

18   going to move on.

19        I would like to speak to the termination clause itself,

20   and that is Clause Number 11, and also how it interacts with

21   Clause 6, which is titled Acceptance and Audit.

22        And that's because Seacorp in its brief essentially argues

23   that either the government or Titan One Zero accepted what had

24   been produced, along the way by Seacorp -- whether it was a

25   deliverable or not, which is simply not the case.

1           The termination clause itself specifically says in

2      paragraph A that the client may terminate the subcontract for

3      any -- the subcontract or any portion thereof for its convenience

4      by providing written notice, dot, dot, dot -- getting straight to

5      the point here -- upon termination for convenience, the prime

6      contractor shall only be liable for services provided and

7      accepted by the effective date of termination.

8           So that phrase provided and accepted really means

9      something here, because ultimately very little was ever provided.

10     And certainly Titan One Zero did not accept what was produced or

11     provided or generated or delivered by Seacorp after that second

12     milestone.

13          Going back to the structure of this contract at all, it

14     was structured in a very deliberate way.  It goes

15     milestone-by-milestone, and when the milestone is accomplished,

16     then it can be accomplished by delivery of certain things, and

17     then Titan One Zero would be obligated to pay for those things.

18     But because milestones one and two were the only two that were

19     ever actually provided to and accepted by Titan One Zero, Titan

20     One Zero's liability under this contract should end right there

21     pursuant to the termination clause itself.

22          I will jump to the last argument here in a moment, but I

23     would like to note for the sake of clarity here, based on the

24     briefing, the issue of whether or not Titan One Zero's

25     counterclaim could or should be paid as a matter of summary

1    judgment for purposes of summary judgment, I would like to

2    withdraw that argument, and I will end with the limitation of

3    liability clause.

4         THE COURT:  So, you're withdrawing your arguments with

5    respect to Section 13?

6         MR. KELLER:  No, Your Honor.  I'm withdrawing the argument

7    that Titan One Zero is entitled to prevail on its counterclaim --

8         THE COURT:  Oh, okay.

9         MR. KELLER:  -- for purchasing certain products.

10        THE COURT:  The last one.

11        MR. KELLER:  The very last one, yes, Your Honor.

12   Although, I would like to note that the entitlement to attorney

13   fees, in the event that Titan One Zero does succeed on the

14   counterclaim, I would ask that that be ruled on in the summary

15   judgment phase.

16        So, paragraph 13, limitation of liability.  So, in the

17   event the Court finds that Seacorp's claims may proceed in some

18   way to trial, Titan One Zero would ask that the Court limit Titan

19   One Zero's liability to the contractual limit of $225,000.

20        $225,000 is the undisputed amount that has been paid from

21   Titan One Zero to Seacorp.  The clause itself, which I will read

22   as quickly as I can in the interest of time, is very clear, and

23   certainly, this Court can make its decision at the summary

24   judgment phase.  "Prime contractors --" quote "-- Prime

25   contractors' aggregate liability for all claims, losses,

1   liabilities, in connection with this subcontract or its subject

2   matter, whether as a result of breach of contract, torts,

3   including negligence, fraud, or otherwise, regardless of the

4   theory of liability, is limited to no more than the total amount

5   of fees paid to subcontractor under the subcontract."

6        Again, it's undisputed that only $225,000 was paid to

7   Seacorp under this subcontract.  There's a case directly on

8   point, *Regency Photo & Video,* that comes out of the Eastern

9   District of Virginia that enforces the limitation liability that

10  is based on amounts paid under a contract.

11       THE COURT:  But the interpretation of that Section that

12  you offer, doesn't it contradict Section 11A that says that

13  that -- that permits Seacorp to recover, you know, all services

14  provided and accepted?

15       MR. KELLER:  Your Honor, Titan One Zero disagrees with

16  that interpretation, Your Honor, because the limitation on

17  liability itself is very clear and governs the entirety of the

18  contract.  What paragraph 11A says is that there are certain

19  things that may be recovered, and it can be -- those things can

20  be enumerated and listed out, but paragraph 13 would trump that,

21  as that is the all-encompassing limitation on liability that --

22       THE COURT:  But I'm supposed to read the contract in a way

23  that reconciles conflicting provisions.

24       MR. KELLER:  Your Honor, I don't believe that paragraph 13

25  is in any way contradicting or contradicted by paragraph 11,

```
 1   because one deals with entitlement to various things, and the
 2   other, that's paragraph 13, states, at the end of the day,
 3   whatever entitlement there may be, under all these different
 4   theories and cites, it has to be capped at a certain amount, and
 5   it's easily calculated as the amount paid.
 6        THE COURT:  I understand your argument; I'm just not
 7   persuaded by it, okay?
 8        MR. KELLER:  Okay.
 9        THE COURT:  And that's because Section 11A says, "Upon
10   termination for convenience, prime contractor shall only be
11   liable for services provided and accepted by the effective date
12   of termination.  It's -- but it's for services provided and
13   accepted, and if I were to read your version of how to read
14   Section 13, that would not necessarily cover services that have
15   been provided, because that chapter or Section 13 is based on the
16   fees that have already been paid, and those fees are based on the
17   delivered milestones, correct?
18        MR. KELLER:  Correct.
19        THE COURT:  But this seems to be a little bit different
20   because this is not -- Chapter 11 is not based on milestones
21   delivered, it's based on services accepted.
22        MR. KELLER:  Well, services and milestones, I believe in
23   this contract should really be read together.  If we look at the
24   contract structure itself, amounts, payments, go -- I believe
25   it's 1 through 13, they reflect the payments that would be
```

```
 1    made --

 2          THE COURT:  I understand your argument.

 3          MR. KELLER:  Your Honor, I would also finally like to note

 4    that paragraph 13 also notes that, in addition, prime contractor

 5    will not be liable to subcontractor in the event {indiscernible}

 6    for any punitive, exemplary, or special damages or lost profits.

 7    Again, this goes to the idea that paragraph 13 is an

 8    all-encompassing notation of liability clause that affects the

 9    entirety of the contract.  And while paragraph 11 may address

10    what may be an entitlement under the contract, paragraph 13 is

11    specifically designed to address limits in liability, regardless

12    of whatever it is that the plaintiff in this case would be asking

13    for.

14          THE COURT:  I understand your argument.

15          MR. KELLER:  I believe I have a few minutes left.

16          THE COURT:  No.

17          MR. KELLER:  No?  Thank you.

18          THE COURT:  No, you do not.  Save some time for rebuttal

19    so you can respond to the arguments that they have.

20          I will say this, as I said at the beginning, well-briefed,

21    and I looked at the exhibits in this case, and so I understand

22    your arguments, and that's why I'm asking very pointed questions

23    on the areas that have given me concerns.

24          MR. KELLER:  Thank you, Your Honor.

25          MR. REINECKER:  Good morning -- or good afternoon, Your
```

```
 1    Honor.  I don't have my watch with me.  Well, I was going to

 2    start with the counterclaim argument, but I feel a little bit

 3    ahead, so I won't go there.

 4         I will say this.  You know, I think some of the comments

 5    at the inception really sort of pointed to what I'll characterize

 6    as a sadness in this case, which is things like not accepting

 7    that the plaintiff here is even the same entity with whom they

 8    contracted with.  Seacorp LLC --

 9         THE COURT:  Before you start going down this road, that is

10    not before me on this motion for summary judgment.

11         MR. REINECKER:  Understood.

12         THE COURT:  So let's just focus our arguments.

13         MR. REINECKER:  I will, Your Honor.  And I'll say this.

14    You know, there are three, four if you included the counterclaim,

15    four discrete issues on summary judgment with volumes of briefing

16    and even more exhibits.  There are certainly more than several

17    genuine disputes of material fact, particularly when viewed in a

18    light most favorable to Seacorp.  I'll start with Remote Sensing

19    Solutions and their role in this contract, of which both the

20    government and Seacorp was -- and Titan was fully aware of at all

21    times.  As we noted in our brief --

22         THE COURT:  I don't need argument on that.

23         MR. REINECKER:  May I ask the Court, is there any argument

24    in particular that you would like to hear more on?

25         THE COURT:  No.
```

1          MR. REINECKER:  Thank you, Your Honor.

2          THE COURT:  I'm answering your question.  There's nothing

3     in particular.

4          MR. REINECKER:  Okay.

5          THE COURT:  When I had my question that I was asking --

6     because at the summary judgment stage, as you noted, I view the

7     evidence in a light most favorable to the nonmoving party, and so

8     the areas that I saw there was genuine issues of material fact is

9     where I focused my questions.

10          MR. REINECKER:  Thank you, Your Honor.  So, with respect

11     to 16-day, I think Your Honor is exactly right that Section 11

12     contemplates a particular process that is triggered upon

13     termination.

14          Now, the briefing that has been submitted by Titan all has

15     August 5th, the stop work notice, the second stop work notice, as

16     some sort of trigger date for notice for -- their five days'

17     notice of termination.  It does not say that, and it certainly

18     does not have that effect.  And Mrs. Goetz-Patridge's

19     characterization of that does not change the reality of that stop

20     work notice.  Mrs. Goetz-Patridge is a professional for sure.

21     She's a very bright woman.  She's been doing her job for a while.

22     But if she wakes up on a Monday thinking it's Sunday morning, it

23     doesn't make it so, and the same is true with this particular

24     issue.

25          The stop work notice on August 5th is as clear as day.

1    And I'll add to that, Your Honor.  Seacorp knows -- or Titan

2    knows it's clear as day.

3         In their counterclaim -- bear with me one second -- this

4    is ECF 21, Page 14 of 17, paragraphs 29 and 31.  They say, "In

5    August 2021, the government issued a stop work order to T10,

6    Titan, under the prime contract.  On August 5th, 2021, T10

7    provided a stop work notice which ended work under the

8    subcontract to Systems.  T10 subsequently terminated the

9    subcontract for convenience," not August, subsequently, and there

10   is no notice of termination, other than the one before Your

11   Honor, which consists of MOD 2, which says, effective January 24,

12   2021, the contract is terminated.

13        So, August is no trigger point for Section 16(b), even if

14   Section 16(b) were to apply.  And the reason why we say it

15   doesn't apply is because it's not really a claim that's being

16   asserted, it is a process that has begun which is collaborative

17   with Titan and with the government to get us paid for services

18   provided and accepted.

19        Even if it were to provide -- and we don't -- or to apply,

20   and we don't think it does, we think there's ample evidence in

21   the record before Your Honor that Titan has waived any argument.

22   The reality is all of the information supporting the services for

23   which we are seeking to be compensated was provided to Titan and

24   it was provided to the government.  And then, unique to this

25   case -- and this is truly extraordinary in government contracting

1    law -- there was direct dialogue, not just between Seacorp and

2    Titan for sure, but between Seacorp and the customer as to the

3    services we had provided and expected to be compensated for.

4    Those e-mails are before Your Honor, and they're referenced at --

5    of course, the MOD is Exhibit Q, and e-mails that I'm referencing

6    with the government are at our Exhibit B, big.

7         The whole purpose of a clause like Section 16(b) is,

8    essentially, to prevent us from coming to the game late.  They

9    don't want us to show up.  They don't want us to settle their

10   case with their government client and then have their

11   subcontractor show up and say, what about us?  That's certainly

12   not the case.  It's certainly not the case.  It's not what

13   happened here.  What did happen is we fully participated in this

14   process over many months, close to six months.  It got to a

15   certain point, and then, for reasons that I still cannot explain,

16   Titan went dark on us and then settled their case with the

17   government for a million dollars.

18        That settlement is in front of Your Honor at Exhibit CC.

19   I don't see how they can possibly go back and say that our claim

20   and our lawsuit here today fails to satisfy a condition

21   precedent.

22        One of the issues laced into that argument is the fact

23   that we didn't issue an invoice.  Obviously, Your Honor addressed

24   this.  We're in a Section 11 posture, which is different from,

25   you know, invoicing for deliverables or completed deliverables or

1    anything of that nature.  The subcontract itself makes

2    distinctions between deliverables and services, and so I don't

3    need to go into more detail.

4         THE COURT:  It's not entirely clear from your pleadings

5    when you are alleging that the claim accrued.

6         MR. REINECKER:  So, the claim would accrue -- I think the

7    earliest you could argue -- would be January 24th, and at that

8    point, both Titan and the government had everything on which our

9    claim is based.  And the reason why I say the earliest is this

10   take us into sort of MOD 2.  And MOD 2 says, "Effective January

11   24, 2022, the contract will be terminated."

12        There is nothing in this volume of paper before Your

13   Honor that suggests an earlier termination date.  No notice.

14   And they're required to give us notice, five days' notice under

15   Section 11.  So, it does take us to sort of yet another somewhat

16   bizarre position of, what is the impact of that given the time

17   and given the fact that we signed it, and then Titan later did

18   not?  But that's the first document that identifies a

19   termination.

20        THE COURT:  You may continue.

21        MR. REINECKER:  Your Honor, I don't have anything more on

22   that particular issue.  Is there any argument or --

23        THE COURT:  I mentioned quickly the issue involving the

24   first breach.  Your position is that RSS is not a government

25   subcontractor, and you make that argument based on looking at

```
1    definitions provided in the Federal Acquisitions Regulations.  I
2    am not persuaded by that.  What -- how do you get beyond --
3    because, to me, it's an issue of whether or not it is material or
4    not, but it does appear that it was more than just a -- and I'm
5    not looking at the issue of waiver and all of that, but just on
6    the issue of whether or not it is a breach of the contract.  How
7    do you get around that argument?  Because it does not appear,
8    based on the facts, that they were only a vendor.
9          MR. REINECKER:  So, if I can clarify the argument that we
10   were making in our reference to the Federal Acquisition
11   Regulation.  It is that the Federal Acquisition Regulation itself
12   does not make a distinction between a subcontractor and a vendor
13   or services or product.  They're all part of the same thing.  And
14   so our point was, when they concede that RSS was a vendor
15   providing hardware, it's no different than a subcontractor.
16   It's that --
17         THE COURT:  But in the contract it is -- if they say you
18   cannot sell contracts without written consent, it is different.
19   You can't go and look at this outside definition and change the
20   terms of the understanding of the contract.
21         MR. REINECKER:  Completely agree with you.  And I would
22   say to that that the consent was given.  So, in our proposal that
23   we submitted to them, it identified Remote Sensing Solutions with
24   a full quote, and the line item in language, top line, was NRE,
25   Nonrecurring engineer, for things like configuration, so on and
```

1    so forth.  The last bottom line says Product.  And so there was

2    full disclosure, both to the government and to Titan, that RSS is

3    going to be integral to this product -- to this process, not just

4    providing hardware but nonrecurring engineering and

5    configuration.

6         The invoice that Mr. Keller had you look at provides the

7    same thing.

8         Now I think he -- it says oh, "configured", past tense,

9    but it is a full disclosure of RSS's involvement in this process.

10   That's sort of issue one.

11        THE COURT:  Okay, but that knowledge, is that written

12   consent?

13        MR. REINECKER:  I would say in this way, Your Honor:  So,

14   we submit -- we submit the precontract proposal -- and I should

15   reference some exhibits as I go through this.  We -- Seacorp's

16   proposal is that Exhibit I.  And on Bates stamp Page Titan 463,

17   that is the reference to nonrecurring engineering, and it goes on

18   for two pages there, and then it's got the product description at

19   the bottom.  For products, deliverables, two systems that fit two

20   wires in order to perform network functionality.

21        At 465, the same quote that's referenced at Exhibit J of

22   their briefing, 11322, was updated on December 22nd of 2020.

23   There is an e-mail -- let me ask you, before I get to the e-mail,

24   the contract itself references RSS in three different places.

25   Um, it's -- it's, I think, illuminating that -- I know the

1    counterclaim isn't before Your Honor, but their counterclaim was

2    for $38,000 for two arenas from RSS.  The deliverable under this

3    contract was for $150,000 just for the deliverable of the

4    hardware product.  There is, of course, nonrecurring engineering

5    and configuration that is part and parcel of that.

6        Exhibit Y of our briefing, Your Honor, this is -- the day

7    the contract was signed confirmation from Mr. Wu to Ms. Getz

8    [sic]:  "We did finally receive in writing via e-mail a

9    confirmation from the KLO that the material deliverable will be

10   remote sensing systems arena STR300 with associated mezzanine

11   cart, quantity 2," so on and so forth.

12       One more worth mentioning here, Your Honor.  This is May

13   18th before contract formation.  Again, this is an e-mail thread

14   between Ms. Getz [sic] and Chris Wu.  "Chris, the reason is

15   twofold.  The Quote speaks to NRE, which we found to be a bit

16   contentious, if the government views that as services because of

17   concerns regarding the third-tier subcontract.  To us, NRE is all

18   part of what needs to happen and is easily explained to

19   reasonable people but curious to know your thoughts."  This is

20   May.  And then they go ahead with the contract and execute it as

21   is.

22       So that, that is the writing, that is the consent.  And

23   then, to answer Your Honor's direct question about materiality --

24   so, the issues that were raised as to materiality were two.  It

25   was intellectual property and quality control issues.

1           So, every member of the engineer team that was surveyed

2     and deposed in this case said that this project did not develop

3     IP.  It is the undisputed fact in this case.  And so the IP

4     concern is not really a concern and not material in this case.

5           The other, quality control, I -- just -- and this will

6     focus on the big picture.  We never defaulted.  We were never

7     sent a letter or anything that suggested quality control issues,

8     so that is a hypothetical concern that has no bearing to the

9     actual facts in this case, and for that reason, in addition to

10    the arguments and the knowledge, and the full awareness of what

11    went into the engagement with RSS, we don't believe that Titan

12    can satisfy the materiality prong of the analysis.

13          Your Honor, with respect to the limitation of liability

14    issue, obviously we've offered a different interpretation.  We

15    don't think it could possibly mean what they said.  That would

16    certainly conflict with what is provided for in Section 11.  We

17    are not seeking consequential, exemplary, or punitive damages in

18    this case.  We're seeking actual direct damages.

19          In the interpretation that they offered, quite frankly, it

20    makes no sense.  There is no way any firm, much less a

21    sophisticated party, would ever agree to a clause that read the

22    way they suggest it should read, to the exclusion of every other

23    clause in this contract.  It not only conflicts with Section A,

24    it eviscerates any sort of payment obligation owed to Seacorp for

25    its performance under this contract.

```
 1          Your Honor, if you have any other questions, I'd be happy
 2   to address them.
 3          THE COURT:  I do not.  Thank you.
 4          MR. REINECKER:  Thank you.
 5          MR. KELLER:  Mr. Keller, before you get started, I need to
 6   take a quick recess, and I'll give everyone five minutes, and
 7   then we'll resume with your rebuttal.  Thank you.
 8          (Thereupon, a recess in the proceedings occurred from
 9   12:01 p.m. until 12:11 p.m.)
10          THE COURT:  Thank you.  Mr. Keller.
11          MR. KELLER:  All right, Your Honor.  Just a few points,
12   issues that I know you're interested in hearing about.  First,
13   two overarching concepts here, the first being what the
14   government knew that Seacorp was doing.  It has nothing to do
15   with Titan One Zero knowing what Seacorp was doing.
16          As counsel numerous times mentioned, what the government
17   knew, what it cared about, none of that really has any place in
18   this case.  This issue is about -- between two private parties.
19   The other is this overarching idea, again, about RSS and whether
20   or not RSS was providing a service or a product.
21          The -- I guess, just to get into a little bit of the
22   definitional issues here, the products themselves, the software
23   defined radio that was going to be part of the end-product
24   delivered to the government regardless.  That's a thing, and that
25   was going to be procured from -- through someone to ultimately
```

1    RSS, but the question is whether or not Seacorp engaged RSS in

2    doing physical, technical work/services work.  No one disputes

3    that the actual RSS product would end up in the end-product given

4    to the government.  It's just how the services were invoked in

5    the use of RSS personnel.

6         Regarding the accrual date, as of right now, the best we

7    had, Your Honor -- and this is not just something that we created

8    yesterday, this is based on records that have been developed for

9    many months now -- is Ms. Goetz-Patridge's statement that the

10   termination had occurred in August of 2021.

11        Again, what she has to say on the matter really is

12   definitive, certainly as Seacorp goes.  She's the director of

13   contracts there.  She signed the subcontract.  She should know.

14   She did know.

15        I would like to note something that did end up in our

16   reply brief, which is the discussion of what's called MOD 2, is

17   inappropriate at this stage, certainly in these proceedings, and

18   my client would argue in any proceedings, because MOD 2 was --

19   let's just say MOD 2 related to settlement negotiations.

20        Moving on to the government's settlement with Titan One

21   Zero, yes, subsequent to the termination and attempts to settle

22   with Seacorp, Titan One Zero did settle ultimately with the

23   government on its overarching prime contract.

24        Now, the overarching prime contract encompassed a lot more

25   work than just what Seacorp was doing, and, as a result, the,

1    quote -- well, the number that is a seemingly large number here

2    in this instant dispute really has no rational relationship to

3    the dispute between Seacorp and Titan One Zero because that was

4    about a totally different issue.

5            I would like to note that whatever was discussed between

6    the parties prior to executing this subcontract is simply

7    irrelevant in the interpretation of the issues that arose and

8    came up in the prime contract itself, whether or not RSS was

9    mentioned in some particular way prior to execution of the

10   subcontract, and whether Seacorp had intended RSS to do services

11   work is irrelevant, because what matters is -- there's a specific

12   clause in the subcontract that governs the issue, and that was

13   signed subsequent to whatever negotiations had occurred prior to.

14           I think also the May 18th e-mail from Ms. Goetz-Patridge

15   to Mr. Wu, who's the president of Titan One Zero, it gets at --

16   well, what it looks like is Seacorp was trying to hide the ball

17   from the government.  What actually Seacorp was actually going to

18   be doing under the subcontract, I don't think that e-mail does

19   any favors for Seacorp, but it certainly does not stand for what

20   Seacorp was trying to stand for, which is that it was some kind

21   of notice that RSS was going be providing services as a lower-

22   tiered subcontractor under a subcontract.

23           Again, at best, it's pretty ambiguous, and -- I don't want

24   to say deceptive.  I'm not trying to pass judgment on Ms.

25   Goetz-Patridge, but what it looks like to me is simply an

1    explanation of a situation where Ms. Goetz-Patridge is trying to

2    avoid discussing the issue with the government and doesn't really

3    want to get into the issue with Titan One Zero either.  That

4    certainly would be noticed, because there's no explanation of

5    what she's really trying to say.

6         THE COURT:  Are you referring to Exhibit Y?

7         MR. KELLER:  Briefly, Your Honor.  Let me pull that up.

8         No, Your Honor.  No, Your Honor.  Exhibit Y is not it.

9    Forgive me for one moment while I find it.

10        THE COURT:  DD.

11        MR. KELLER:  Well, thank you.  Yes, Your Honor, DD.

12   Really, nothing here, Your Honor, that speaks to what it is

13   exactly that Ms. Goetz-Patridge is trying to avoid discussing,

14   both with the government and Titan One Zero, but when read in its

15   entirety, it does not suggest what it's been offered to suggest,

16   which it's been offered to suggest that somehow RSS would be

17   performing all kinds of services under this contract.

18        I would also like to note that May 18th, 2020 precedes the

19   contract's execution by a substantial amount of time, and the

20   clause in the subcontract would govern how the parties actually

21   intended to work together under the subcontract, at its inception

22   and moving forward.

23        Regarding materiality, I would like to note that there's

24   an entire clause that takes up approximately a half a page in the

25   subcontract.  It's clause number 9 regarding intellectual

1    property.

2         Whether Seacorp's witnesses testify that there was

3    intellectual property involved in this case or not, is beside the

4    point, because ultimately what matters when the parties got

5    together and signed the contract in the first place and where

6    their mindsets were would govern on the issues of materiality and

7    whether or not a subcontractor should or should not be permitted

8    to work with lower-tiered subs.

9         Similar argument for the quality control issue.  At the

10   end of the day, whether quality control ultimately mattered in

11   this case, which is not an issue that is really before us today,

12   what mattered was when the two parties executed that subcontract,

13   was quality control important to Titan One Zero?

14        And finally, one brief comment on limitation of liability.

15   I would like to note again the limitation on liability was

16   executed by both parties.  Mr. Reineker suggests that no rational

17   party would ever sign on to that language if it meant what it

18   said, or at least what Titan One Zero argues that it means, but I

19   will note that really the language itself can be read, and it

20   speaks for itself.  It limits liability to amounts paid.  It is

21   easily read in conjunction with other clauses within the

22   contract.

23        For example, the termination for convenience clause, which

24   says a party that's terminated may be entitled to certain costs.

25   That can coexist with a limitation that says whatever those costs

1    are, it's never going to be more than this amount.  And the

2    parties entered into that together knowingly.  They agreed to

3    that.  And it makes sense in a relationship like this with

4    milestone dates where the parties can move through the

5    relationship together and the amount of liability increases as

6    they engage more and more throughout the contract performance.

7          Your Honor, that is all Titan One Zero has.  I would ask

8    that the motion for summary judgment be granted in favor of Titan

9    One Zero.

10         In the event that the case is not resolved in its entirety

11   through summary judgment, we would ask that the limitation on

12   liability clause be enforced to prevent any recovery above

13   $225,000 in this case.

14         THE COURT:  Thank you.  We all are aware of the standard

15   for summary judgment.  It's appropriate where there is no genuine

16   issue or no genuine dispute as to any material fact and the

17   movant is entitled to judgment as a matter of law.

18         A genuine dispute about a material fact exists if, after

19   reviewing the record as a whole, a Court finds that a reasonable

20   jury could return a verdict for the nonmoving party.

21         And, as I stated before, all inferences must be made in

22   favor of the nonmoving party.

23         I turn first to the issue of whether or not Seacorp

24   breached the subcontract first, because it's well-settled in

25   Virginia law that a party who commits the first material breach

1   of a contract is not entitled to enforce the contract.  And here

2   the clause at issue is Section 18 of the subcontract, which

3   provides that "neither party shall assign the subcontract or any

4   portion of the work to be performed to any other person or entity

5   without the express written consent of the other party", and then

6   it continues.

7       Now, Titan contends that Seacorp materially breached this

8   provision by engaging RSS as a subcontractor without Titan's

9   express written consent, and Seacorp does not dispute the

10  allegation that RSS performed services; they just argue that

11  Titan knew of and consented to Seacorp's use of RSS's SDRs and

12  the work that was attended to the product.

13      Now, as an initial matter, the Court finds that there is

14  no genuine issue -- there is no genuine dispute that, from the

15  Court's perspective, that Seacorp breached Section 18 by failing

16  to obtain Titan's express written consent.

17      And regardless of whether there was an understanding

18  between the parties or some type of implied consent from Titan

19  that RSS would be providing services, such consent was neither

20  expressed nor written, which is required by Section 18.

21      Now, I do find that there is a dispute as to whether such

22  breach was material.  A material breach is a failure to do

23  something that is so fundamental to the contract that the failure

24  to perform that obligation defeats an essential purpose of the

25  contract.

```
 1          And I understand your, you know, reliance, I think, on

 2   Section 9 in support of this, but materiality isn't of itself a

 3   factual assessment, and it's something that the Court -- it's an

 4   assessment that the Court is going to have to make at trial.

 5          So, I'm going to deny the motion with respect to that

 6   claim or that argument.

 7          The next issue deals with the -- whether or not Seacorp

 8   complied with the condition precedent to initiating legal action.

 9   And the focus there is on Section 16B of the subcontract.

10          Now, I find that Section 16B clearly sets forth a

11   condition precedent to initiating legal action, and that that

12   encompasses all subcontractor claims.

13          And I also find that it survived the subcontract's

14   termination because it is a structural provision relating to

15   remedies and dispute resolution, and that is from the Lynton

16   case, a Supreme Court case 401 U.S. at 190.  It's a 1991 case.

17   And so, because of that, I don't agree with Seacorp's position

18   that Section 16 is not applicable here.  I think it is, but I do

19   find that there's a genuine issue as to when Seacorp's claim

20   accrued.

21          And the parties disagree as to that.  Titan argues that it

22   was -- and they rely on the August 12, 2001 letter to Seacorp, as

23   well as the stop work order from the government, as well as the

24   deposition testimony of, I believe, Ms. Goetz-Patridge.  But I

25   don't think -- as to the communications, I don't think any of the
```

1   communications Titan points to in its undisputed facts can

2   reasonably be construed as communicating that the subcontract was

3   terminated.

4        As I indicated before, you can't just look to the stop

5   work order, because there had been a prior stop work order and

6   the work still continued.

7        And then, when I look at the August 12th letter, it does

8   to me appear to be forward-looking, indicating that Titan's going

9   to work -- or has been instructed to work to negotiations -- to

10  negotiate a conclusion of the subcontract.

11       Moreover, the e-mails between Titan and Seacorp -- and I

12  understand your argument with respect to MOD 2, but under Rule

13  408, it's not admissible to prove or disprove the validity or the

14  amount of the disputed claim or to impeach Titan's prior

15  inconsistent statement or contradiction, but under 408B the Court

16  can look at it for other purposes.

17       So, even though it's inadmissible in one aspect, it can

18  be -- or purpose, it can be admissible for another purpose, and

19  here I'm looking at that to determine or to see that, yes, there

20  is a genuine dispute as to when the contract was actually

21  terminated and when the claim accrued, just to say that there is

22  a genuine issue.

23       Now, whether you're able to prove up at trial, we'll see,

24  but just to say that there's a genuine issue of fact as to

25  that -- as to when the claim accrued, I can look at MOD 2 to

1    determine that.

2         I also find that there's a genuine issue under Section 11A

3    as to what services had been provided by Seacorp and accepted by

4    the effective date of termination.  I'm not at all convinced by

5    your arguments this morning that somehow services and

6    deliverables are the same.  The contract -- there are parts of

7    the contract that uses the word "deliverables," there are

8    portions of the contract that uses "services," and then there are

9    portions of the contract that use both.  And so that -- I also

10   find that the language of Section 6A and 11A are clear and

11   unambiguous.

12        And it says that "Titan's liable for all services provided

13   and accepted by the effective date of termination."  Now, there

14   will be a genuine issue of fact, and there will be evidence at

15   trial regarding what services were accepted.

16        And finally, as to the limitation on liability under

17   Section 13.  In Virginia waivers and limitations of liability and

18   contracts are enforceable.  And here Section 13 provides, "Prime

19   contractor's aggregate liability for all claims, losses,

20   liabilities, or damages in connection with the subcontract or its

21   subject matter, as a result of breach of contract, is limited to

22   no more than the total amount of fees paid to subcontractor under

23   the subcontract."

24        Titan argues that this clause limits the liability to the

25   amount that has actually been paid under the subcontract, which

1   is at this time -- it was $225,000.

2        Now, Seacorp argues that this clause limits Titan's

3   liability to the price of the subcontract, which is the

4   1.7 million and change.  The Court finds that Section 13 limits

5   the liability to the price of the contract here.  Section 13 uses

6   the words "total" in combination with "fees" -- "amount of fees

7   paid under the subcontract," and together that is reasonably

8   construed as meaning the whole sum the parties agreed would be

9   paid under the contract, and that's just using total -- the

10  comprising or constituting the whole -- that's just the

11  definition of total under the Miriam Webster dictionary -- and

12  the Court considers the subcontract as a whole and with an eye

13  towards reconciling conflicts between provisions.

14       And as I said before, this Section 11A and Section 13

15  appear to be in conflict.  Section 11 clearly permits Seacorp to

16  recover all services provided and accepted before termination,

17  and so, adopting Titan's interpretation of Section 13 would cause

18  inconsistency in the subcontract because it would limit the

19  recovery to the fees that have been paid just up to that point.

20       And so I think I have outlined for you the areas where I

21  find that there are genuine issues of material fact, as well as

22  my interpretations of certain provisions of the contract.

23       At this stage, summary judgment is denied.  The trial is

24  set for October 3rd.  I wanted to go over a few procedures so

25  that you are aware ahead of time.  I will sit from 9:30 to 5 on

```
1    trial days.  We'll take a mid-morning break around 11:15, break
2    for lunch between 1 and 2, and there will be an afternoon break
3    at 3:30.
4         For exhibits, I think I said this at the final pretrial
5    conference, that there should be the original set of exhibits
6    plus two copy sets for the Court, and that those should be tabbed
7    and bound in a binder.  Seven days prior to trial, each side
8    should submit proposed Findings of Fact and Conclusions of Law.
9         I think that I also asked at the final pretrial hearing if
10   you all had engaged in settlement discussions yet and urged you
11   to contact Magistrate Judge Davis, if you had not done that yet.
12   Have you?  Without any details, just yes or no.
13        MR. KELLER:  No, Your Honor.
14        Forgive me.  I'm sorry, we had engaged in settlement
15   discussions of some sort, which I can detail.  I was answering
16   the question of whether or not we reached out to the magistrate.
17        THE COURT:  I understand.  Thank you.  I then encourage
18   you to do that.  It may be helpful.  Our magistrate judges have
19   been -- you know, sometimes it helps when there is a neutral
20   third party involved in that process.
21        And so, if you are interested in doing that, you should do
22   that soon because their calendars fill up just like ours do.  Is
23   there anything further?
24        MR. KELLER:  No, Your Honor.
25        MR. REINECKER:  No, Your Honor.
```

```
 1          THE COURT:  We're in recess.

 2          (Proceedings adjourned at 12:36 p.m.)

 3                      C E R T I F I C A T E

 4

 5                      I, Scott L. Wallace, RDR-CRR, certify that
            the foregoing is a correct transcript from the record of
 6          proceedings in the above-entitled matter.

 7

            /s/ Scott L. Wallace              9/5/23
 8          ----------------------------      ----------------
            Scott L. Wallace, RDR, CRR            Date
 9          Official Court Reporter

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

## $

**$150,000** [1] - 27:3
**$225,000** [5] - 16:19; 17:6; 34:13; 39:1
**$38,000** [1] - 27:2

## /

**/s** [1] - 41:7

## 1

**1** [2] - 18:25; 40:2
**1.7** [1] - 39:4
**1001** [2] - 1:16, 20
**1099s** [2] - 7:5; 8:11
**11** [9] - 14:20; 17:25; 18:20; 19:9; 21:11; 23:24; 24:15; 28:16; 39:15
**1100** [2] - 1:16, 21
**11322** [1] - 26:22
**11710** [2] - 2:4, 8
**11:15** [3] - 1:7; 3:2; 40:1
**11A** [6] - 17:12, 18; 18:9; 38:2, 10; 39:14
**12** [1] - 36:22
**12:01** [1] - 29:9
**12:11** [1] - 29:9
**12:36** [1] - 41:2
**12th** [6] - 12:5; 13:2, 7, 23; 14:11; 37:7
**13** [17] - 16:5, 16; 17:20, 24; 18:2, 14-15, 25; 19:4, 7, 10; 38:17; 39:4, 14, 17
**14** [1] - 22:4
**15** [1] - 11:4
**16** [4] - 11:4, 8; 36:18
**16(b** [3] - 22:13; 23:7
**16-day** [1] - 21:11
**16B** [2] - 36:9
**17** [1] - 22:4
**18** [4] - 6:23; 35:2, 15, 20
**18th** [3] - 27:13; 31:14; 32:18
**190** [1] - 36:16
**1991** [1] - 36:16
**1:22-cv-01019-PTG-IDD** [1] - 1:5
**1:22-cv-1210** [1] - 3:4

## 2

**2** [10] - 22:11; 24:10; 27:11; 30:16, 18-19; 37:12, 25; 40:2
**20** [2] - 11:10
**20-day** [2] - 11:14; 13:20
**2000** [2] - 2:4, 9
**20001** [2] - 1:17, 21
**2001** [1] - 36:22
**20190** [2] - 2:5, 9
**202-857-0200** [2] - 1:18, 22

**202-857-1000** [1] - 1:17
**2020** [2] - 26:22; 32:18
**2021** [6] - 6:5; 11:20; 22:5, 12; 30:10
**2022** [1] - 24:11
**2023** [2] - 1:6; 3:1
**21** [1] - 22:4
**22314-5798** [1] - 2:14
**22nd** [1] - 26:22
**24** [4] - 1:6; 3:1; 22:11; 24:11
**24th** [1] - 24:7
**29** [1] - 22:4

## 3

**31** [1] - 22:4
**310-622-5774** [1] - 2:5
**3:30** [1] - 40:3
**3rd** [1] - 39:24

## 4

**401** [2] - 2:13; 36:16
**408** [1] - 37:13
**408B** [1] - 37:15
**443-584-6558** [1] - 2:14
**463** [1] - 26:16
**465** [1] - 26:21

## 5

**5** [1] - 39:25
**500** [1] - 10:9
**5th** [5] - 11:19; 13:23; 21:15, 25; 22:6

## 6

**6** [1] - 14:21
**646-894-4099** [1] - 1:22
**6A** [1] - 38:10

## 7

**703-861-7295** [1] - 2:10

## 9

**9** [2] - 32:25; 36:2
**9/5/23** [1] - 41:7
**9:30** [1] - 39:25

## A

**a.m** [2] - 1:7; 3:2
**abbreviation** [1] - 5:1
**ability** [1] - 8:24

**able** [2] - 9:3; 37:23
**above-entitled** [1] - 41:6
**absolutely** [1] - 5:23
**absolves** [1] - 9:24
**accept** [1] - 15:10
**Acceptance** [1] - 14:21
**accepted** [14] - 7:15; 14:23; 15:7, 19; 17:14; 18:11, 13, 21; 22:18; 38:3, 13, 15; 39:16
**accepting** [1] - 20:6
**access** [1] - 8:13
**accomplished** [3] - 14:2; 15:15
**accrual** [3] - 11:10, 21; 30:6
**accrue** [1] - 24:6
**accrued** [5] - 12:3; 24:5; 36:20; 37:21, 25
**acknowledge** [1] - 10:15
**acoustic** [1] - 10:11
**Acquisition** [2] - 25:10
**Acquisitions** [1] - 25:1
**Action** [1] - 1:4
**action** [2] - 36:8, 11
**activities** [1] - 8:25
**actual** [3] - 28:9, 18; 30:3
**add** [1] - 22:1
**addition** [2] - 12:4; 19:4; 28:9
**additional** [1] - 12:16
**address** [3] - 19:9, 11; 29:2
**addressed** [1] - 23:23
**adds** [1] - 13:2
**adjourned** [1] - 41:2
**admissible** [2] - 37:13, 18
**adopting** [1] - 39:17
**affects** [1] - 19:8
**afternoon** [2] - 19:25; 40:2
**aggregate** [2] - 16:25; 38:19
**ago** [1] - 7:7
**agree** [3] - 25:21; 28:21; 36:17
**agreed** [2] - 34:2; 39:8
**agrees** [1] - 7:3
**ahead** [3] - 20:3; 27:20; 39:25
**aided** [1] - 2:16
**al** [2] - 1:7; 3:4
**Alexandria** [1] - 2:14
**all-encompassing** [2] - 17:21; 19:8
**allegation** [1] - 35:10
**alleging** [1] - 24:5
**allows** [1] - 5:21
**altogether** [1] - 12:19
**ambiguous** [1] - 31:23
**America** [2] - 2:4, 8
**amount** [11] - 16:20; 17:4; 18:4; 32:19; 34:1, 5; 37:14; 38:22, 25; 39:6
**amounts** [3] - 17:10; 18:24; 33:20
**ample** [1] - 22:20
**analysis** [1] - 28:12
**answer** [1] - 27:23
**answering** [2] - 21:2; 40:15
**anyway** [1] - 9:15

**appear** [4] - 25:4, 7; 37:8; 39:15
**appearances** [1] - 3:5
**APPEARANCES** [2] - 1:14; 2:1
**applicable** [1] - 36:18
**apply** [3] - 22:14, 19
**appropriate** [1] - 34:15
**areas** [3] - 19:23; 21:8; 39:20
**arena** [1] - 27:10
**arenas** [1] - 27:2
**argue** [3] - 24:7; 30:18; 35:10
**argues** [5] - 14:22; 33:18; 36:21; 38:24; 39:2
**arguing** [3] - 3:13, 17, 23
**argument** [24] - 7:15; 9:12, 15-16, 22; 10:16; 15:22; 16:2, 6; 18:6; 19:2, 14; 20:2, 22-23; 22:21; 23:22; 24:22, 25; 25:7, 9; 33:9; 36:6; 37:12
**arguments** [7] - 4:8; 16:4; 19:19, 22; 20:12; 28:10; 38:5
**arose** [1] - 31:7
**aspect** [1] - 37:17
**aspects** [1] - 9:5
**asserted** [1] - 22:16
**asserts** [1] - 6:13
**assessment** [2] - 36:3
**assign** [2] - 6:24; 35:3
**associated** [1] - 27:10
**Associates** [1] - 5:2
**assume** [2] - 10:14
**assuming** [1] - 10:16
**attempts** [1] - 30:21
**attended** [1] - 35:12
**attention** [1] - 4:19
**attorney** [2] - 4:15; 16:12
**Audit** [1] - 14:21
**AUGUST** [1] - 3:1
**August** [17] - 1:6; 6:5; 11:20; 12:5; 13:2, 7, 23; 14:11; 21:15, 25; 22:5, 9, 13; 30:10; 36:22; 37:7
**authority** [1] - 7:8
**avoid** [2] - 32:2, 13
**aware** [3] - 20:20; 34:14; 39:25
**awareness** [1] - 28:10

### B

**ball** [1] - 31:16
**based** [10] - 15:23; 17:10; 18:15, 20-21; 24:9, 25; 25:8; 30:8
**basic** [4] - 4:23; 7:21; 8:6
**Bates** [1] - 26:16
**bear** [1] - 22:3
**bearing** [1] - 28:8
**BEFORE** [1] - 1:12
**begin** [1] - 6:11
**beginning** [1] - 19:20
**begins** [1] - 8:18
**begun** [1] - 22:16
**behalf** [4] - 3:6, 10; 7:10; 11:17

**belabor** [1] - 11:6
**beside** [1] - 33:3
**best** [3] - 6:17; 30:6; 31:23
**better** [1] - 13:18
**between** [15] - 6:3; 13:19, 21; 23:1; 24:2; 25:12; 27:14; 29:18; 31:3, 5; 35:18; 37:11; 39:13; 40:2
**beyond** [1] - 25:2
**big** [2] - 23:6; 28:6
**binder** [1] - 40:7
**bit** [5] - 5:16; 18:19; 20:2; 27:15; 29:21
**bizarre** [1] - 24:16
**black** [1] - 6:17
**black-and-white** [1] - 6:17
**bottom** [2] - 26:1, 19
**bound** [1] - 40:7
**breach** [13] - 6:12, 14-16; 7:18; 17:2; 24:24; 25:6; 34:25; 35:22; 38:21
**breached** [3] - 34:24; 35:7, 15
**break** [3] - 40:1
**brief** [6] - 4:22; 9:20; 14:22; 20:21; 30:16; 33:14
**briefed** [2] - 4:11; 19:20
**briefing** [6] - 4:19; 15:24; 20:15; 21:14; 26:22; 27:6
**briefly** [3] - 4:7; 9:14; 32:7
**briefs** [1] - 5:2
**bright** [1] - 21:21
**bring** [1] - 9:13
**brought** [2] - 4:25; 9:12
**business** [1] - 11:11

### C

**calculated** [1] - 18:5
**calendar** [1] - 11:10
**calendars** [1] - 40:22
**cannot** [2] - 23:15; 25:18
**capped** [1] - 18:4
**cared** [1] - 29:17
**cart** [1] - 27:11
**Case** [1] - 3:4
**case** [37] - 4:20, 24-25; 6:1, 16; 7:23; 8:14; 9:6, 10, 18; 11:25; 12:3; 14:6, 25; 17:7; 19:12, 21; 20:6; 22:25; 23:10, 12, 16; 28:2-4, 9, 18; 29:18; 33:3, 11; 34:10, 13; 36:16
**CC** [1] - 23:18
**Cell** [1] - 2:14
**certain** [8] - 13:15; 15:16; 16:9; 17:18; 18:4; 23:15; 33:24; 39:22
**certainly** [17] - 4:14; 7:8; 8:3, 24; 12:15; 13:23; 15:10; 16:23; 20:16; 21:17; 23:11; 28:16; 30:12, 17; 31:19; 32:4
**Certainly** [1] - 5:17
**certify** [1] - 41:5
**change** [3] - 21:19; 25:19; 39:4
**chapter** [1] - 18:15

**Chapter** [1] - 18:20
**characterization** [1] - 21:19
**characterize** [1] - 20:5
**check** [1] - 9:3
**Chris** [2] - 27:14
**circumstances** [2] - 12:20, 23
**cites** [1] - 18:4
**Civil** [1] - 1:4
**claim** [12] - 11:10; 12:3; 22:15; 23:19; 24:5, 9; 36:6, 19; 37:14, 21, 25
**claims** [4] - 16:17, 25; 36:12; 38:19
**clarify** [1] - 25:9
**clarity** [1] - 15:23
**clause** [20] - 9:8; 14:19; 15:1, 21; 16:3, 21; 19:8; 23:7; 28:21, 23; 31:12; 32:20, 24-25; 33:23; 34:12; 35:2; 38:24; 39:2
**Clause** [3] - 11:8; 14:20
**Clauses** [1] - 11:4
**clauses** [2] - 11:7; 33:21
**clear** [7] - 9:8; 16:22; 17:17; 21:25; 22:2; 24:4; 38:10
**clearly** [2] - 36:10; 39:15
**CLERK** [1] - 3:3
**client** [3] - 15:2; 23:10; 30:18
**close** [1] - 23:14
**co** [1] - 3:11
**co-counsel** [1] - 3:11
**coexist** [1] - 33:25
**collaborative** [1] - 22:16
**combination** [1] - 39:6
**coming** [2] - 13:10; 23:8
**comment** [1] - 33:14
**comments** [1] - 20:4
**commits** [1] - 34:25
**communicating** [1] - 37:2
**communication** [1] - 10:12
**communications** [3] - 11:12; 36:25; 37:1
**companies** [3] - 8:10, 12, 20
**company** [3] - 7:4; 9:4; 10:5
**compensated** [2] - 22:23; 23:3
**complete** [1] - 13:15
**completed** [1] - 23:25
**completely** [1] - 25:21
**complied** [1] - 36:8
**comprising** [1] - 39:10
**computer** [1] - 2:16
**computer-aided** [1] - 2:16
**concede** [1] - 25:14
**concepts** [1] - 29:13
**concern** [1] - 28:4, 8
**concerns** [2] - 19:23; 27:17
**conclusion** [3] - 12:6; 13:10; 37:10
**Conclusions** [1] - 40:8
**condition** [5] - 11:3; 23:20; 36:8, 11
**conference** [1] - 40:5
**configuration** [3] - 25:25; 26:5; 27:5
**configured** [4] - 10:10, 13, 20; 26:8
**confirmation** [2] - 27:7, 9

**conflict** [2] - 28:16; 39:15
**conflicting** [1] - 17:23
**conflicts** [2] - 28:23; 39:13
**conjunction** [1] - 33:21
**connection** [2] - 17:1; 38:20
**consent** [12] - 7:1; 10:25; 25:18, 22; 26:12; 27:22; 35:5, 9, 16, 18
**consented** [1] - 35:11
**consequential** [1] - 28:17
**considers** [1] - 39:12
**consists** [1] - 22:11
**constitutes** [1] - 7:18
**constituting** [1] - 39:10
**construed** [2] - 37:2; 39:8
**Cont)** [1] - 2:1
**contact** [1] - 40:11
**contemplates** [1] - 21:12
**contends** [1] - 35:7
**contentious** [1] - 27:16
**context** [3] - 12:11; 13:3
**continue** [1] - 24:20
**continued** [4] - 12:24; 37:6
**continues** [1] - 35:6
**contract** [64] - 5:8, 11, 25; 6:2, 14; 7:10, 22, 24; 8:19; 9:2; 10:24; 11:5, 17; 12:7, 25; 13:6, 13-14, 23; 15:13, 20; 17:2, 10, 18, 22; 18:23; 19:9; 20:19; 22:6, 12; 24:11; 25:6, 17, 20; 26:24; 27:3, 7, 13, 20; 28:23, 25; 30:23; 31:8; 32:17; 33:5, 22; 34:6; 35:1, 23, 25; 37:20; 38:6-9, 21; 39:5, 9, 22
**contract's** [1] - 32:19
**contracted** [1] - 20:8
**contracting** [3] - 8:3, 7; 22:25
**contractor** [5] - 8:7, 21; 15:6; 18:10; 19:4
**contractor's** [1] - 38:19
**contractors** [1] - 16:24
**contractors'** [1] - 16:25
**contracts** [7] - 6:19; 7:8; 11:6, 17; 25:18; 30:13; 38:18
**contractual** [1] - 16:19
**contradict** [1] - 17:12
**contradicted** [1] - 17:25
**contradicting** [1] - 17:25
**contradiction** [1] - 37:15
**control** [9] - 8:24; 9:1, 3; 27:25; 28:5, 7; 33:9, 13
**convenience** [6] - 11:20; 15:3, 5; 18:10; 22:9; 33:23
**convinced** [1] - 38:4
**copy** [1] - 40:6
**Corporation** [1] - 5:2
**correct** [5] - 5:18; 12:1; 18:17; 41:5
**costs** [1] - 33:24
**counsel** [3] - 3:11; 5:12; 29:16
**Counsel** [1] - 5:12
**counterclaim** [8] - 15:25; 16:7, 14; 20:2, 14; 22:3; 27:1

**couple** [1] - 12:10
**course** [7] - 4:24; 9:1, 7; 10:22; 11:5; 23:5; 27:4
**Court** [21] - 2:12; 3:3; 4:4; 9:8; 11:5; 16:17, 23; 20:23; 34:19; 35:13; 36:3, 16; 37:15; 39:4, 12; 40:6; 41:9
**Court's** [1] - 35:15
**Courthouse** [1] - 2:13
**COURTROOM** [1] - 3:3
**cover** [1] - 18:14
**created** [1] - 30:7
**critical** [1] - 11:21
**CRR** [3] - 2:12; 41:5, 8
**curious** [1] - 27:19
**customer** [1] - 23:2

**D**

**damages** [4] - 19:6; 28:17; 38:20
**dark** [1] - 23:16
**data** [1] - 10:12
**Date** [1] - 41:8
**date** [8] - 11:21; 15:7; 18:11; 21:16; 24:13; 30:6; 38:4, 13
**dates** [2] - 12:10; 34:4
**Davis** [1] - 40:11
**days** [4] - 11:10; 40:1, 7
**days'** [2] - 21:16; 24:14
**DC** [2] - 1:17, 21
**DD** [2] - 32:10
**deals** [2] - 18:1; 36:7
**December** [1] - 26:22
**deceptive** [1] - 31:24
**decision** [1] - 16:23
**defaulted** [1] - 28:6
**defeats** [1] - 35:24
**defendant** [3] - 4:5, 24; 5:4
**Defendant** [2] - 1:9; 2:3
**defense** [2] - 6:12; 9:15
**defined** [2] - 7:11; 29:23
**definition** [2] - 25:19; 39:11
**definitional** [1] - 29:22
**definitions** [1] - 25:1
**definitive** [1] - 30:12
**deliberate** [1] - 15:14
**deliberately** [1] - 8:2
**deliver** [1] - 10:19
**deliverable** [5] - 14:8, 25; 27:2, 9
**deliverables** [6] - 23:25; 24:2; 26:19; 38:6
**delivered** [5] - 8:19; 15:11; 18:17, 21; 29:24
**delivery** [1] - 15:16
**denied** [2] - 10:4; 39:23
**deny** [1] - 36:5
**deposed** [1] - 28:2
**deposition** [5] - 6:20; 11:18; 12:2; 13:2; 36:24
**description** [4] - 10:7, 9, 17; 26:18

**designed** [1] - 19:11
**detail** [2] - 24:3; 40:15
**details** [1] - 40:12
**determine** [2] - 37:19; 38:1
**develop** [1] - 28:2
**developed** [3] - 4:20; 14:15; 30:8
**dialogue** [1] - 23:1
**dictionary** [1] - 39:11
**difference** [1] - 12:11
**different** [12] - 8:6; 12:11, 20, 22; 18:3, 19; 23:24; 25:15, 18; 26:24; 28:14; 31:4
**direct** [4] - 4:15; 23:1; 27:23; 28:18
**directed** [1] - 5:10
**directing** [1] - 12:18
**directly** [1] - 17:7
**director** [4] - 6:19; 7:8; 11:17; 30:12
**disagree** [1] - 36:21
**disagrees** [1] - 17:15
**disclosure** [2] - 26:2, 9
**discrete** [1] - 20:15
**discuss** [1] - 9:14
**discussed** [1] - 31:5
**discussing** [2] - 32:2, 13
**discussion** [1] - 30:16
**discussions** [4] - 13:19, 21; 40:10, 15
**disprove** [1] - 37:13
**dispute** [10] - 7:17; 31:2; 34:16, 18; 35:9, 14, 21; 36:15; 37:20
**disputed** [1] - 37:14
**disputes** [2] - 20:17; 30:2
**distinction** [1] - 25:12
**distinctions** [1] - 24:2
**distribution** [1] - 10:12
**DISTRICT** [3] - 1:1, 13
**District** [2] - 2:13; 17:9
**document** [2] - 9:13; 24:18
**dollars** [1] - 23:17
**done** [5] - 8:2; 12:15; 13:3, 6; 40:11
**dot** [1] - 15:4
**down** [2] - 7:21; 20:9
**Drive** [2] - 2:4, 8
**during** [2] - 4:19; 5:9

**E**

**e-mail** [7] - 10:23; 26:23; 27:8, 13; 31:14, 18
**e-mails** [1] - 23:4; 37:11
**earliest** [2] - 24:7, 9
**easier** [1] - 4:16
**easily** [3] - 18:5; 27:18; 33:21
**EASTERN** [1] - 1:2
**Eastern** [1] - 17:8
**ECF** [1] - 22:4
**effect** [1] - 21:18
**effective** [5] - 15:7; 18:11; 22:11; 38:4, 13
**Effective** [1] - 24:10

**either** [3] - 5:6; 14:23; 32:3
**elected** [1] - 8:2
**Email** [5] - 1:18, 23; 2:6, 10, 15
**encompassed** [1] - 30:24
**encompasses** [1] - 36:12
**encompassing** [2] - 17:21; 19:8
**encourage** [1] - 40:17
**end** [10] - 7:12; 10:12; 15:20; 16:2; 18:2; 29:23; 30:3, 15; 33:10
**end-product** [2] - 29:23; 30:3
**ended** [2] - 12:25; 22:7
**enforce** [1] - 35:1
**enforceable** [1] - 38:18
**enforced** [1] - 34:12
**enforces** [1] - 17:9
**engage** [1] - 34:6
**engaged** [3] - 30:1; 40:10, 14
**engagement** [1] - 28:11
**engaging** [2] - 8:1; 35:8
**engineer** [2] - 25:25; 28:1
**Engineering** [1] - 5:2
**engineering** [3] - 26:4, 17; 27:4
**enormous** [1] - 8:17
**entered** [1] - 34:2
**entire** [1] - 32:24
**entirely** [1] - 24:4
**entirety** [4] - 17:17; 19:9; 32:15; 34:10
**entities** [1] - 5:4
**entitled** [6] - 13:6; 16:7; 33:24; 34:17; 35:1; 41:6
**entitlement** [4] - 16:12; 18:1, 3; 19:10
**entity** [3] - 7:1; 20:7; 35:4
**enumerated** [1] - 17:20
**equal** [1] - 7:13
**equipment** [1] - 7:24
**Esq** [4] - 1:15, 19; 2:3, 7
**essence** [2] - 7:21, 24
**essential** [1] - 35:24
**essentially** [3] - 11:20; 14:22; 23:8
**et** [2] - 1:7; 3:4
**event** [4] - 16:13, 17; 19:5; 34:10
**evidence** [4] - 6:18; 21:7; 22:20; 38:14
**eviscerates** [1] - 28:24
**exactly** [2] - 21:11; 32:13
**example** [2] - 8:10; 33:23
**exclusion** [1] - 28:22
**exclusively** [1] - 8:14
**excuse** [2] - 6:21; 7:20
**execute** [1] - 27:20
**executed** [2] - 33:12, 16
**executing** [1] - 31:6
**execution** [2] - 31:9; 32:19
**exemplary** [2] - 19:6; 28:17
**exercise** [1] - 8:24
**Exhibit** [10] - 9:13, 19; 23:5, 18; 26:16, 21; 27:6; 32:6, 8
**exhibits** [6] - 9:22; 19:21; 20:16; 26:15; 40:4
**exists** [1] - 34:18

**expected** [1] - 23:3
**expertise** [1] - 11:6
**explain** [1] - 23:15
**explained** [2] - 14:1; 27:18
**explanation** [2] - 32:1, 4
**express** [4] - 7:1; 35:5, 9, 16
**expressed** [1] - 35:20
**extensions** [1] - 12:10
**extent** [1] - 13:16
**extraordinary** [1] - 22:25
**eye** [1] - 39:12

**F**

**Fact** [1] - 40:8
**fact** [16] - 4:23; 8:15; 10:2; 11:13; 13:18; 14:15; 20:17; 21:8; 23:22; 24:17; 28:3; 34:16, 18; 37:24; 38:14; 39:21
**Facts** [1] - 6:9
**facts** [5] - 4:7, 23; 25:8; 28:9; 37:1
**factual** [1] - 36:3
**failing** [1] - 35:15
**fails** [1] - 23:20
**failure** [2] - 35:22
**favor** [2] - 34:8, 22
**favorable** [2] - 20:18; 21:7
**favors** [1] - 31:19
**Fax** [2] - 1:18, 22
**Federal** [2] - 25:1, 10
**federal** [5] - 5:8; 8:6, 14, 16; 12:7
**fees** [8] - 16:13; 17:5; 18:16; 38:22; 39:6, 19
**few** [5] - 4:7, 18; 19:15; 29:11; 39:24
**fill** [1] - 40:22
**final** [2] - 40:4, 9
**finally** [4] - 19:3; 27:8; 33:14; 38:16
**Findings** [1] - 40:8
**firm** [1] - 28:20
**first** [19] - 3:5; 4:2, 23; 6:12, 16; 10:2, 7; 11:25; 12:13, 17; 24:18, 24; 29:12; 33:5; 34:23
**fit** [1] - 26:19
**five** [3] - 21:16; 24:14; 29:6
**focus** [3] - 20:12; 28:6; 36:9
**focused** [1] - 21:9
**FOR** [1] - 1:2
**foregoing** [1] - 41:5
**forgive** [1] - 32:9; 40:14
**formation** [1] - 27:13
**forth** [3] - 26:1; 27:11; 36:10
**forthcoming** [1] - 13:9
**forward** [2] - 32:22; 37:8
**forward-looking** [1] - 37:8
**four** [2] - 20:14
**frankly** [3] - 6:15, 17; 28:19
**fraud** [1] - 17:3
**frequently** [1] - 5:24
**front** [1] - 23:18
**full** [5] - 9:19; 25:24; 26:2, 9; 28:10

**fully** [2] - 20:20; 23:13
**functionality** [1] - 26:20
**fundamental** [1] - 35:23
**future** [1] - 13:11

**G**

**game** [1] - 23:8
**generated** [1] - 15:11
**genuine** [16] - 7:17; 12:2; 20:17; 21:8; 34:15, 18; 35:14; 36:19; 37:20, 22, 24; 38:2, 14; 39:21
**Getz** [2] - 27:7, 14
**GILES** [1] - 1:12
**given** [5] - 19:23; 24:16; 25:22; 30:3
**Goetz** [15] - 6:18; 7:7; 10:2; 11:16; 12:12; 13:1; 21:18, 20; 30:9; 31:14, 25; 32:1, 13; 36:24
**Goetz-Patridge** [11] - 6:19; 7:7; 10:2; 11:16; 13:1; 21:20; 31:14, 25; 32:1, 13; 36:24
**Goetz-Patridge's** [4] - 6:18; 12:12; 21:18; 30:9
**govern** [2] - 32:20; 33:6
**government** [40] - 5:10, 25; 8:9, 15-16, 18, 22; 12:14, 18; 13:5; 14:3-5, 7, 9, 13-14, 23; 20:20; 22:5, 17, 24-25; 23:6, 10, 17; 24:8, 24; 26:2; 27:16; 29:14, 16, 24; 30:4, 23; 31:17; 32:2, 14; 36:23
**government's** [1] - 30:20
**governs** [2] - 17:17; 31:12
**granted** [1] - 34:8
**guess** [1] - 29:21

**H**

**half** [1] - 32:24
**happy** [1] - 29:1
**hardware** [3] - 25:15; 26:4; 27:4
**hear** [6] - 3:20; 4:2; 5:12, 15, 21; 20:24
**hearing** [2] - 29:12; 40:9
**HEARING** [1] - 1:12
**helpful** [1] - 40:18
**helps** [1] - 40:19
**hereunder** [1] - 6:25
**hide** [1] - 31:16
**highlight** [1] - 4:18
**Honor** [48] - 3:6, 12, 15, 17, 24; 4:1, 3; 7:20; 10:6; 12:8; 14:16; 16:6, 11; 17:15, 24; 19:3, 24; 20:1, 13; 21:1, 10-11; 22:1, 11, 21; 23:4, 18, 23; 24:13, 21; 26:13; 27:1, 6, 12; 28:13; 29:1, 11; 30:7; 32:7, 11-12; 34:7; 40:13, 24
**Honor's** [1] - 27:23
**HONORABLE** [1] - 1:12
**hypothetical** [1] - 28:8

## I

idea [2] - 19:7; 29:19
identified [2] - 11:12; 25:23
identifies [1] - 24:18
illuminating [1] - 26:25
impact [1] - 24:16
impeach [1] - 37:14
implied [1] - 35:18
implies [1] - 13:10
important [3] - 9:5, 9; 33:13
inadmissible [1] - 37:17
inappropriate [1] - 30:17
inception [2] - 20:5; 32:21
included [1] - 20:14
including [3] - 7:5; 9:6; 17:3
inconsistency [1] - 39:18
inconsistent [1] - 37:15
increases [1] - 34:5
indicated [1] - 37:4
indicates [2] - 10:17, 19
indicating [1] - 37:8
indication [1] - 10:5
indiscernible [3] - 8:15, 18; 19:5
individual [1] - 7:9
individuals [1] - 8:12
indulge [1] - 14:16
inferences [1] - 34:21
information [2] - 14:3; 22:22
initial [2] - 12:17; 35:13
initiating [2] - 36:8, 11
instant [2] - 4:5; 31:2
instead [1] - 10:19
instructed [3] - 12:6; 13:9; 37:9
integral [1] - 26:3
integration [1] - 7:23
intellectual [7] - 8:9, 13, 18, 23; 27:25;
32:25; 33:3
intended [2] - 31:10; 32:21
interact [1] - 11:5
interacts [1] - 14:20
interest [2] - 8:12; 16:22
interested [4] - 8:1; 13:25; 29:12;
40:21
interpretation [6] - 17:11, 16; 28:14,
19; 31:7; 39:17
interpretations [1] - 39:22
interpreting [1] - 11:6
introduce [1] - 4:7
introduction [1] - 4:23
invoice [4] - 9:17; 23:23; 26:6
invoices [1] - 14:1
invoicing [1] - 23:25
invoked [1] - 30:4
involved [3] - 8:10; 33:3; 40:20
involvement [1] - 26:9
involving [1] - 24:23
IP [2] - 28:3

irrelevant [2] - 31:7, 11
ISR [1] - 10:11
issue [40] - 6:2, 17-18; 7:4, 9, 13; 8:6,
18; 9:24; 11:2, 4; 12:3, 12; 15:24;
21:24; 23:23; 24:22; 25:3, 5-6; 26:10;
28:14; 29:18; 31:4, 12; 32:2; 33:9, 11;
34:16, 23; 35:2, 14; 36:7, 19; 37:22, 24;
38:2, 14
issued [3] - 11:19, 24; 22:5
issues [13] - 4:18; 20:15; 21:8; 23:22;
27:24; 28:7; 29:12, 22; 31:7; 33:6;
39:21
item [1] - 10:7, 21; 25:24
itself [19] - 8:4; 9:8, 18; 10:5, 8-9;
14:19; 15:1, 21; 16:21; 17:17; 18:24;
24:1; 25:11; 26:24; 31:8; 33:19; 36:2

## J

January [3] - 22:11; 24:7, 10
job [1] - 21:21
Judge [1] - 40:11
JUDGE [1] - 1:13
judges [1] - 40:18
judgment [14] - 4:9; 16:1, 15, 24;
20:10, 15; 21:6; 31:24; 34:8, 11, 15, 17;
39:23
jump [2] - 8:20; 15:22
jury [1] - 34:20
justify [1] - 13:22

## K

keep [3] - 5:3, 16, 21
Keep [1] - 5:13
Keller [7] - 2:3; 3:16, 22; 4:3; 26:6;
29:5, 10
KELLER [33] - 3:16, 24; 4:1, 3, 14, 22;
5:14, 17, 23; 6:11; 7:19; 9:22; 12:8;
13:12, 17; 16:6, 9, 11; 17:15, 24; 18:8,
18, 22; 19:3, 15, 17, 24; 29:5, 11; 32:7,
11; 40:13, 24
kind [3] - 14:1; 31:20
kinds [1] - 32:17
KLO [1] - 27:9
knowing [1] - 29:15
knowingly [1] - 34:2
knowledge [2] - 26:11; 28:10
knows [2] - 22:1
Kristen [3] - 2:7; 3:18, 21
kristen.loesch@praemialaw.com [1]
- 2:11

## L

laced [1] - 23:22
laid [1] - 6:9
language [5] - 13:17; 25:24; 33:17, 19;

38:10
large [1] - 31:1
last [4] - 15:22; 16:10; 26:1
late [1] - 23:8
law [5] - 6:16; 10:24; 23:1; 34:17, 25
Law [3] - 2:3, 8; 40:8
lawsuit [1] - 23:20
layers [1] - 8:10
least [1] - 33:18
left [1] - 19:15
legal [2] - 36:8, 11
less [1] - 28:20
letter [7] - 12:5; 13:2, 7; 14:11; 28:7;
36:22; 37:7
liabilities [2] - 17:1; 38:20
liability [23] - 15:20; 16:3, 16, 19, 25;
17:4, 9, 17, 21; 19:8, 11; 28:13; 33:14,
20; 34:5, 12; 38:16, 19, 24; 39:3, 5
liable [4] - 15:6; 18:11; 19:5; 38:12
light [2] - 20:18; 21:7
limit [3] - 16:18; 39:18
limitation [11] - 16:2, 16; 17:9, 16, 21;
28:13; 33:14, 25; 34:11; 38:16
limitations [1] - 38:17
limited [2] - 17:4; 38:21
limits [5] - 19:11; 33:20; 38:24; 39:2, 4
line [3] - 25:24; 26:1
listed [1] - 17:20
LLC [5] - 1:3, 6; 3:3; 20:8
LOESCH [2] - 3:18, 21
Loesch [3] - 2:7; 3:18, 21
look [10] - 11:10; 14:12; 18:23; 25:19;
26:6; 37:4, 7, 16, 25
looked [1] - 19:21
looking [4] - 24:25; 25:5; 37:8, 19
looks [2] - 31:21; 33:8
losses [2] - 16:25; 38:19
lost [1] - 19:6
loud [1] - 3:9
lower [4] - 7:4; 8:11; 31:21; 33:8
lower-tiered [2] - 7:4; 33:8
lunch [1] - 40:2
Lynn [1] - 2:7
Lynton [1] - 36:15

## M

ma'am [1] - 3:20
machine [1] - 2:16
Magistrate [1] - 40:11
magistrate [2] - 40:16, 18
mail [7] - 10:23; 26:23; 27:8, 13; 31:14,
18
mails [3] - 23:4; 37:11
Mansitan [3] - 1:19; 3:6, 10
material [19] - 6:12, 16; 7:18-20; 8:5;
9:6; 20:17; 21:8; 25:3; 27:9; 28:4;
34:16, 18, 25; 35:22; 39:21
materiality [8] - 7:21; 8:17; 27:23;

28:12; 32:23; 33:6; 36:2
**materially** [2] - 6:13; 35:7
**matter** [8] - 5:5; 15:25; 17:2; 30:11; 34:17; 35:13; 38:21; 41:6
**mattered** [2] - 33:10, 12
**matters** [2] - 31:11; 33:4
**Matthew** [3] - 2:3; 3:16; 4:3
**matthew.keller@praemialaw.com** [1] - 2:6
**mean** [2] - 7:16; 28:15
**meaning** [1] - 39:8
**means** [2] - 15:8; 33:18
**meant** [1] - 33:17
**meet** [1] - 10:23
**member** [1] - 28:1
**mentioned** [3] - 24:23; 29:16; 31:9
**mentioning** [1] - 27:12
**mess** [1] - 8:21
**met** [1] - 11:13
**mezzanine** [1] - 27:10
**mic** [2] - 5:17, 20
**Michael** [1] - 1:15
**mid** [1] - 40:1
**mid-morning** [1] - 40:1
**milestone** [6] - 14:8; 15:12, 15; 34:4
**milestone-by-milestone** [1] - 15:15
**milestones** [5] - 6:8; 15:18; 18:17, 20, 22
**million** [2] - 23:17; 39:4
**mindsets** [1] - 33:6
**minutes** [2] - 19:15; 29:6
**Miriam** [1] - 39:11
**miss** [1] - 14:17
**mix** [1] - 8:20
**MOD** [9] - 22:11; 23:5; 24:10; 30:16, 18-19; 37:12, 25
**moment** [5] - 6:15; 7:7; 14:16; 15:22; 32:9
**Monday** [1] - 21:22
**months** [3] - 23:14; 30:9
**moreover** [1] - 37:11
**MORNING** [1] - 3:1
**morning** [9] - 3:6, 12-14; 4:3; 19:25; 21:22; 38:5; 40:1
**most** [2] - 20:18; 21:7
**MOTION** [1] - 1:12
**motion** [7] - 3:25; 4:6, 9, 11; 20:10; 34:8; 36:5
**movant** [2] - 4:5; 34:17
**move** [3] - 10:6; 14:18; 34:4
**moving** [6] - 6:11; 10:22; 11:2, 15; 30:20; 32:22
**MR** [48] - 3:12, 16, 24; 4:1, 3, 14, 22; 5:14, 17, 23; 6:11; 7:19; 9:22; 12:8; 13:12, 17; 16:6, 9, 11; 17:15, 24; 18:8, 18, 22; 19:3, 15, 17, 24-25; 20:11, 13, 23; 21:1, 4, 10; 24:6, 21; 25:9, 21; 26:13; 29:4, 11; 32:7, 11; 40:13, 24
**MS** [5] - 3:6, 10, 15, 18, 21

**msow@pilieromazza.com** [1] - 1:23
**multiple** [1] - 8:10
**must** [1] - 34:21

## N

**name** [1] - 3:8
**nature** [1] - 24:1
**Navy** [2] - 5:9, 11
**necessarily** [2] - 5:24; 18:14
**need** [5] - 4:12; 5:21; 20:22; 24:3; 29:5
**needs** [1] - 27:18
**negligence** [1] - 17:3
**negotiate** [3] - 12:6; 13:10; 37:10
**negotiation** [1] - 14:10
**negotiations** [3] - 30:19; 31:13; 37:9
**network** [1] - 26:20
**neutral** [1] - 40:19
**never** [3] - 28:6; 34:1
**next** [2] - 11:16; 36:7
**none** [1] - 29:17
**nonetheless** [1] - 5:4
**nonmoving** [3] - 21:7; 34:20, 22
**Nonrecurring** [1] - 25:25
**nonrecurring** [3] - 26:4, 17; 27:4
**notation** [1] - 19:8
**note** [16] - 7:9; 9:11; 10:2, 6, 22; 11:7, 15; 15:23; 16:12; 19:3; 30:15; 31:5; 32:18, 23; 33:15, 19
**noted** [7] - 4:15; 5:1; 6:20; 7:7; 12:23; 20:21; 21:6
**notes** [5] - 11:9; 12:8; 13:3; 19:4
**nothing** [6] - 10:17; 14:6; 21:2; 24:12; 29:14; 32:12
**notice** [19] - 9:25; 10:23; 11:19, 21; 12:17, 25; 15:4; 21:15-17, 20, 25; 22:7, 10; 24:13; 31:21
**noticed** [1] - 32:4
**notices** [1] - 12:9
**NRE** [3] - 25:24; 27:15, 17
**number** [7] - 8:5; 10:7, 21, 24; 31:1; 32:25
**Number** [2] - 3:4; 14:20
**numerous** [1] - 29:16
**NW** [2] - 1:16, 20

## O

**obligated** [2] - 6:14; 15:17
**obligation** [2] - 28:24; 35:24
**obtain** [1] - 35:16
**obviously** [2] - 23:23; 28:14
**occurred** [3] - 29:8; 30:10; 31:13
**October** [1] - 39:24
**OF** [2] - 1:2, 12
**offer** [1] - 17:12
**offered** [4] - 28:14, 19; 32:15
**Official** [2] - 2:12; 41:9

**officially** [1] - 12:15
**One** [53] - 3:4, 16, 18, 21; 4:5, 24; 5:7, 11, 25; 6:3, 6, 12, 14; 7:22, 25; 8:14, 24; 9:1, 17, 23, 25; 10:16; 11:13; 13:22, 24; 14:2, 7, 11, 14, 23; 15:10, 17, 19-20, 24; 16:7, 13, 18-19, 21; 17:15; 29:15; 30:20, 22; 31:3, 15; 32:3, 14; 33:13, 18; 34:7, 9
**one** [19] - 8:6; 9:11; 10:24; 11:25; 12:1; 14:16; 15:18; 16:10; 18:1; 22:3, 10; 23:22; 26:10; 27:12; 30:2; 32:9; 33:14; 37:17
**ONE** [1] - 1:6
**ongoing** [1] - 10:18
**order** [5] - 22:5; 26:20; 36:23; 37:5
**orders** [1] - 11:24
**original** [1] - 40:5
**otherwise** [1] - 17:3
**outlined** [1] - 39:20
**outside** [1] - 25:19
**overall** [1] - 5:22
**overarching** [4] - 29:13, 19; 30:23
**owed** [1] - 28:24
**ownership** [1] - 8:13

## P

**p.m** [3] - 29:9; 41:2
**Page** [2] - 22:4; 26:16
**page** [2] - 9:19; 32:24
**pages** [1] - 26:18
**paid** [17] - 13:6, 22; 14:1; 15:25; 16:20; 17:5, 10; 18:5, 16; 22:17; 33:20; 38:22, 25; 39:7, 9, 19
**paper** [1] - 24:12
**papers** [2] - 4:11, 13
**paragraph** [14] - 6:23; 11:8; 15:2; 16:16; 17:18, 20, 24-25; 18:2; 19:4, 7, 9
**paragraphs** [1] - 22:4
**paraphrasing** [1] - 13:3
**parcel** [1] - 27:5
**parentheses** [1] - 10:10
**parenthesis** [1] - 10:12
**part** [6] - 14:6, 10; 25:13; 27:5, 18; 29:23
**participated** [1] - 23:13
**particular** [7] - 10:20; 20:24; 21:3, 12, 23; 24:22; 31:9
**particularly** [1] - 20:17
**parties** [18] - 6:6; 9:9; 12:14, 19, 24; 13:19, 21; 29:18; 31:6; 32:20; 33:4, 12, 16; 34:2, 4; 35:18; 36:21; 39:8
**parts** [1] - 38:6
**party** [14] - 6:13, 21, 24; 7:2; 21:7; 28:21; 33:17, 24; 34:20, 22, 25; 35:3, 5; 40:20
**pass** [1] - 31:24
**past** [3] - 10:10, 13; 26:8
**PATRICIA** [1] - 1:12

**Patridge** [11] - 6:19; 7:7; 10:2; 11:16; 13:1; 21:20; 31:14, 25; 32:1, 13; 36:24
**Patridge's** [4] - 6:18; 12:12; 21:18; 30:9
**pay** [3] - 13:5; 14:14; 15:17
**paying** [1] - 14:4
**payment** [1] - 28:24
**payments** [2] - 18:24
**people** [2] - 3:9; 27:19
**perform** [3] - 8:1; 26:20; 35:24
**performance** [4] - 5:9; 7:5; 28:25; 34:6
**performed** [5] - 6:25; 9:10; 10:18; 35:4, 10
**performing** [2] - 8:11; 32:17
**perhaps** [2] - 5:1; 14:14
**period** [2] - 11:14; 13:20
**permits** [2] - 17:13; 39:15
**permitted** [1] - 33:7
**person** [5] - 6:21; 7:1, 5; 10:3; 35:4
**personnel** [1] - 30:5
**perspective** [1] - 35:15
**persuaded** [2] - 18:7; 25:2
**phase** [2] - 16:15, 24
**Photo** [1] - 17:8
**phrase** [1] - 15:8
**physical** [2] - 13:13; 30:2
**picture** [1] - 28:6
**piece** [1] - 14:4
**PilieroMazza** [2] - 1:15, 20
**place** [2] - 29:17; 33:5
**places** [1] - 26:24
**Plaintiff** [2] - 1:4, 15
**plaintiff** [5] - 3:5, 10, 18; 19:12; 20:7
**plaintiff's** [1] - 9:20
**Plaza** [2] - 2:4, 8
**pleadings** [1] - 24:4
**PLLC** [4] - 1:15, 20; 2:3, 8
**plus** [1] - 40:6
**point** [8] - 15:5; 17:8; 22:13; 23:15; 24:8; 25:14; 33:4; 39:19
**pointed** [2] - 19:22; 20:5
**points** [2] - 29:11; 37:1
**portion** [3] - 6:25; 15:3; 35:4
**portions** [2] - 38:8
**position** [4] - 7:22; 24:16, 24; 36:17
**possibly** [2] - 23:19; 28:15
**posture** [1] - 23:24
**Praemia** [2] - 2:3, 8
**precedent** [4] - 11:3; 23:21; 36:8, 11
**precedes** [1] - 32:18
**precontract** [1] - 26:14
**present** [4] - 3:10; 11:9, 23; 13:25
**presentment** [4] - 11:2, 14; 13:20
**president** [1] - 31:15
**pretrial** [2] - 40:4, 9
**pretty** [3] - 10:5; 12:23; 31:23
**prevail** [1] - 16:7
**prevent** [2] - 23:8; 34:12
**previous** [1] - 4:15

**price** [2] - 39:3, 5
**prime** [12] - 5:8; 8:7, 21; 15:5; 16:24; 18:10; 19:4; 22:6; 30:23; 31:8
**Prime** [2] - 16:24; 38:18
**private** [1] - 29:18
**procedures** [1] - 39:24
**proceed** [1] - 16:17
**Proceedings** [2] - 2:16; 41:2
**PROCEEDINGS** [1] - 1:12
**proceedings** [4] - 29:8; 30:17; 41:6
**process** [6] - 21:12; 22:16; 23:14; 26:3, 9; 40:20
**processing** [2] - 10:11
**procured** [1] - 29:25
**produced** [3] - 2:16; 14:24; 15:10
**Product** [1] - 26:1
**product** [10] - 10:8; 25:13; 26:3, 18; 27:4; 29:20, 23; 30:3; 35:12
**products** [3] - 16:9; 26:19; 29:22
**professional** [1] - 21:20
**proffered** [1] - 9:16
**profits** [1] - 19:6
**project** [2] - 12:15; 28:2
**promise** [1] - 8:22
**promised** [3] - 8:14, 22
**promises** [1] - 8:9
**prong** [1] - 28:12
**properly** [1] - 12:9
**property** [7] - 8:9, 13, 19, 23; 27:25; 33:1, 3
**proposal** [3] - 25:22; 26:14, 16
**proposed** [1] - 40:8
**prove** [2] - 37:13, 23
**provide** [3] - 6:22; 7:12; 22:19
**provided** [23] - 7:23; 9:3; 10:4, 23; 15:6, 8-9, 11, 19; 17:14; 18:11, 15; 22:7, 18, 23-24; 23:3; 25:1; 28:16; 38:3, 12; 39:16
**provides** [3] - 26:6; 35:3; 38:18
**providing** [6] - 15:4; 25:15; 26:4; 29:20; 31:21; 35:19
**provision** [2] - 35:8; 36:14
**provisions** [3] - 17:23; 39:13, 22
**pull** [1] - 32:7
**punitive** [2] - 19:6; 28:17
**purchasing** [1] - 16:9
**purpose** [3] - 23:7; 35:24; 37:18
**purposes** [3] - 9:1; 16:1; 37:16
**pursuant** [3] - 5:8; 10:20; 15:21
**put** [1] - 13:18

# Q

**quality** [9] - 8:23, 25; 9:3; 27:25; 28:5, 7; 33:9, 13
**quantity** [1] - 27:11
**questions** [3] - 19:22; 21:9; 29:1
**quick** [2] - 9:11; 29:6
**quickly** [3] - 12:24; 16:22; 24:23

**quite** [2] - 5:15; 28:19
**quotation** [2] - 9:23; 10:7
**quotations** [1] - 9:19
**Quote** [1] - 27:15
**quote** [9] - 6:21, 24; 7:11; 10:9; 16:24; 25:24; 26:21; 31:1

# R

**radio** [1] - 29:23
**raised** [1] - 27:24
**rather** [1] - 4:17
**rational** [2] - 31:2; 33:16
**RDR** [3] - 2:12; 41:5, 8
**RDR-CRR** [1] - 41:5
**reached** [1] - 40:16
**read** [11] - 4:10; 16:21; 17:22; 18:13, 23; 28:21; 32:14; 33:19, 21
**reality** [2] - 21:19; 22:22
**really** [2] - 6:7; 8:20; 9:5, 15; 11:11; 13:6; 14:6, 10; 15:8; 18:23; 20:5; 22:15; 28:4; 29:17; 30:11; 31:2; 32:2, 5, 12; 33:11, 19
**reason** [5] - 8:5; 22:14; 24:9; 27:14; 28:9
**reasonable** [2] - 27:19; 34:19
**reasonably** [2] - 37:2; 39:7
**reasons** [2] - 8:6; 23:15
**rebuttal** [2] - 19:18; 29:7
**receive** [1] - 27:8
**received** [3] - 10:16; 11:22; 14:7
**recess** [3] - 29:6, 8; 41:1
**recite** [1] - 4:17
**recognized** [4] - 11:5; 12:15; 13:1; 14:11
**recognizes** [1] - 13:17
**reconciles** [1] - 17:23
**reconciling** [1] - 39:13
**record** [5] - 11:11; 12:21; 22:21; 34:19; 41:5
**records** [1] - 30:8
**recover** [2] - 17:13; 39:16
**recovered** [1] - 17:19
**recovery** [2] - 34:12; 39:19
**refer** [2] - 5:5; 6:3
**reference** [3] - 25:10; 26:15, 17
**referenced** [2] - 23:4; 26:21
**references** [1] - 26:24
**referencing** [1] - 23:5
**referring** [1] - 32:6
**reflect** [1] - 18:25
**regarding** [6] - 8:9; 27:17; 30:6; 32:23, 25; 38:15
**regardless** [4] - 17:3; 19:11; 29:24; 35:17
**Regency** [1] - 17:8
**Regulation** [2] - 25:11
**Regulations** [1] - 25:1
**REINECKER** [15] - 3:12; 19:25; 20:11,

13, 23; 21:1, 4, 10; 24:6, 21; 25:9, 21;
26:13; 29:4; 40:25
**Reinecker** [3] - 1:15; 3:11, 15
**Reineker** [1] - 33:16
**related** [1] - 30:19
**relating** [1] - 36:14
**relationship** [3] - 31:2; 34:3, 5
**relevant** [1] - 4:8
**reliance** [1] - 36:1
**rely** [1] - 36:22
**remedies** [1] - 36:15
**remind** [1] - 9:7
**remote** [1] - 27:10
**Remote** [2] - 20:18; 25:23
**remove** [1] - 10:12
**repeat** [2] - 3:8; 4:12
**reply** [1] - 30:16
**reported** [1] - 2:16
**REPORTER** [3] - 5:12, 15, 19
**Reporter** [3] - 2:12; 41:9
**represent** [1] - 4:4
**represented** [1] - 4:4
**represents** [1] - 13:18
**required** [2] - 24:14; 35:20
**requirement** [1] - 11:13
**requirements** [1] - 10:24
**resolution** [1] - 36:15
**resolved** [1] - 34:10
**respect** [5] - 16:5; 21:10; 28:13; 36:5;
37:12
**respond** [1] - 19:19
**Reston** [2] - 2:5, 9
**result** [3] - 17:2; 30:25; 38:21
**resume** [1] - 29:7
**return** [1] - 34:20
**reviewing** [1] - 34:19
**rights** [1] - 8:23
**RMR** [1] - 2:12
**road** [1] - 20:9
**role** [1] - 20:19
**Ross** [1] - 2:3
**RSS** [27] - 7:16, 23; 8:1; 9:16, 25; 10:4,
18-19; 24:24; 25:14; 26:2, 24; 27:2;
28:11; 29:19; 30:1, 3, 5; 31:8, 10, 21;
32:16; 35:8, 10, 19
**RSS's** [2] - 26:9; 35:11
**Rule** [1] - 37:12
**ruled** [1] - 16:14

## S

**sadness** [1] - 20:6
**sake** [2] - 10:15; 15:23
**satisfy** [2] - 23:20; 28:12
**Save** [1] - 19:18
**saves** [1] - 4:16
**saw** [1] - 21:8
**Scott** [4] - 2:12; 41:5, 7
**scottwallace.edva@gmail.com** [1] -

2:15
  **SCRR/STS** [1] - 10:10
  **SDRs** [1] - 35:11
  **Seacorp** [72] - 3:3, 7; 4:25; 5:3, 5, 7;
6:2, 4, 6, 13, 19; 7:9, 25; 8:3, 15; 9:10,
12, 15, 17, 24-25; 10:3; 11:9, 13, 18,
22-23; 12:8; 13:5, 21, 25; 14:15, 22, 24;
15:11; 16:21; 17:7, 13; 20:8, 18, 20;
22:1; 23:1; 28:24; 29:14; 30:1, 12, 22,
25; 31:3, 10, 16-17, 19-20; 34:23; 35:7,
9, 15; 36:7, 22; 37:11; 38:3; 39:2, 15
  **SEACORP** [1] - 1:3
  **Seacorp's** [7] - 8:25; 16:17; 26:15;
33:2; 35:11; 36:17, 19
  **second** [9] - 9:19; 11:2; 12:1, 14, 25;
14:7; 15:11; 21:15; 22:3
  **Section** [31] - 16:5; 17:11; 18:9, 14-15;
21:11; 22:13; 23:7, 24; 24:15; 28:16,
23; 35:2, 15, 20; 36:2, 9-10, 18; 38:2,
10, 17-18; 39:4, 14-15, 17
  **see** [3] - 23:19; 37:19, 23
  **seeing** [1] - 13:25
  **seeking** [3] - 22:23; 28:17
  **seem** [1] - 13:8
  **seemingly** [1] - 31:1
  **sell** [1] - 25:18
  **sells** [1] - 13:7
  **senior** [1] - 10:3
  **sense** [2] - 28:20; 34:3
  **sensing** [1] - 27:10
  **Sensing** [2] - 20:18; 25:23
  **sent** [3] - 9:16; 28:7
  **separate** [1] - 5:4
  **Series** [1] - 10:9
  **service** [1] - 29:20
  **services** [35] - 7:12, 16, 22; 8:1; 9:3, 6,
10; 10:4, 18; 15:6; 17:13; 18:11, 14,
21-22; 22:17, 22; 23:3; 24:2; 25:13;
27:16; 30:4; 31:10, 21; 32:17; 35:10,
19; 38:3, 5, 8, 12, 15; 39:16
  **services''** [1] - 6:22
  **SESSION** [1] - 3:1
  **set** [4] - 12:20, 22; 39:24; 40:5
  **sets** [2] - 36:10; 40:6
  **settle** [3] - 23:9; 30:21
  **settled** [2] - 23:16; 34:24
  **settlement** [5] - 23:18; 30:19; 40:10,
14
  **seven** [1] - 40:7
  **several** [1] - 20:16
  **shall** [6] - 6:24; 7:2; 9:10; 15:6; 18:10;
35:3
  **shorthand** [1] - 2:16
  **show** [2] - 23:9, 11
  **sic** [2] - 27:8, 14
  **side** [1] - 40:7
  **sides** [1] - 4:11
  **sign** [1] - 33:17
  **signed** [7] - 7:10; 11:17; 24:17; 27:7;
30:13; 31:13; 33:5

  **similar** [1] - 33:9
  **simple** [1] - 5:3
  **simplicity** [1] - 5:5
  **simply** [3] - 14:25; 31:6, 25
  **sit** [1] - 39:25
  **situation** [1] - 32:1
  **six** [1] - 23:14
  **software** [1] - 29:22
  **Solutions** [2] - 20:19; 25:23
  **someone** [4] - 6:21; 7:11; 29:25
  **sometimes** [2] - 5:10; 40:19
  **somewhat** [1] - 24:15
  **soon** [1] - 40:22
  **sophisticated** [1] - 28:21
  **sorry** [4] - 3:8, 20; 5:14; 40:14
  **SOW** [11] - 11:9; 20:5; 21:16; 24:10, 15;
26:10; 28:24; 40:15
  **SOW** [3] - 3:6, 10, 15
  **Sow** [3] - 1:19; 3:6, 10
  **speaks** [3] - 27:15; 32:12; 33:20
  **special** [1] - 19:6
  **specific** [2] - 9:16; 31:11
  **specifically** [8] - 6:20, 23; 7:10; 9:9;
11:9, 18; 15:1; 19:11
  **specifies** [1] - 10:25
  **Square** [1] - 2:13
  **stage** [3] - 21:6; 30:17; 39:23
  **stamp** [1] - 26:16
  **stand** [3] - 11:8; 31:19
  **standard** [1] - 34:14
  **start** [3] - 20:2, 9, 18
  **started** [4] - 11:25; 12:1, 23; 29:5
  **Statement** [1] - 6:9
  **statement** [3] - 9:8; 30:9; 37:15
  **STATES** [2] - 1:1, 13
  **States** [5] - 2:13; 5:9, 25; 14:3
  **states** [1] - 18:2
  **stating** [1] - 12:5
  **still** [4] - 5:21; 7:17; 23:15; 37:6
  **stop** [17] - 11:19, 24; 12:9, 13-14, 17,
19, 25; 21:15, 19, 25; 22:5, 7; 36:23;
37:4
  **STR300** [1] - 27:10
  **straight** [2] - 7:19; 15:4
  **Street** [2] - 1:16, 20
  **strike** [2] - 10:14; 12:13
  **strong** [1] - 10:5
  **strongly** [1] - 10:4
  **structural** [1] - 36:14
  **structure** [2] - 15:13; 18:24
  **structured** [1] - 15:14
  **subcontract** [42] - 5:7; 6:3, 7, 23, 25;
7:6, 13, 18; 8:11; 10:1; 15:2; 17:1, 5, 7;
22:8; 24:1; 27:17; 30:13; 31:6, 10, 12,
18, 22; 32:20, 25; 33:12; 34:24; 35:2;
36:9; 37:2, 10; 38:20, 23, 25; 39:3, 7,
12, 18
  **subcontract's** [1] - 36:13
  **subcontracting** [1] - 10:25

**subcontractor** [17] - 6:1, 20; 7:3, 11, 17; 8:8; 17:5; 19:5; 23:11; 24:25; 25:12, 15; 31:22; 33:7; 35:8; 36:12; 38:22
**subcontracts** [1] - 7:4
**subject** [2] - 17:1; 38:21
**submit** [3] - 26:14; 40:8
**submitted** [4] - 9:23; 12:5; 21:14; 25:23
**subs** [1] - 33:8
**subsequent** [2] - 30:21; 31:13
**subsequently** [3] - 6:1; 22:8
**substantial** [1] - 32:19
**succeed** [1] - 16:13
**suggest** [4] - 28:22; 32:15
**suggested** [1] - 28:7
**suggests** [2] - 24:13; 33:16
**Suite** [4] - 1:16, 21; 2:4, 9
**sum** [1] - 39:8
**summary** [12] - 4:8; 15:25; 16:1, 14, 23; 20:10, 15; 21:6; 34:8, 11, 15; 39:23
**Sunday** [1] - 21:22
**supervision** [1] - 8:25
**support** [2] - 10:11; 36:2
**supporting** [1] - 22:22
**supposed** [1] - 17:22
**Supreme** [1] - 36:16
**surveyed** [1] - 28:1
**survived** [1] - 36:13
**systems** [2] - 26:19; 27:10
**Systems** [2] - 5:2; 22:8

## T

**T10** [3] - 22:5, 8
**tabbed** [1] - 40:6
**team** [1] - 28:1
**technical** [1] - 30:2
**tense** [3] - 10:11, 13; 26:8
**terminate** [3] - 5:11; 6:2; 15:2
**terminated** [7] - 5:25; 22:8, 12; 24:11; 33:24; 37:3, 21
**termination** [21] - 6:5; 11:20; 14:19; 15:1, 5, 7, 21; 18:10, 12; 21:13, 17; 22:10; 24:13, 19; 30:10, 21; 33:23; 36:14; 38:4, 13; 39:16
**terms** [2] - 7:15; 25:20
**territory** [1] - 12:21
**testify** [1] - 33:2
**testimony** [5] - 6:18; 12:2, 4, 12; 36:24
**themselves** [1] - 29:22
**theories** [1] - 18:4
**theory** [1] - 17:4
**thereafter** [1] - 12:24
**thereof** [1] - 15:3
**Thereupon** [1] - 29:8
**thinking** [1] - 21:22
**third** [2] - 27:17; 40:20
**third-tier** [1] - 27:17
**thoughts** [1] - 27:19

**thread** [1] - 27:13
**three** [2] - 20:14; 26:24
**throughout** [2] - 4:8; 34:6
**tier** [1] - 27:17
**tiered** [3] - 7:4; 31:22; 33:8
**tiers** [1] - 8:11
**TITAN** [1] - 1:6
**Titan** [75] - 3:4, 16, 18, 21; 4:5, 24; 5:7, 10, 25; 6:3, 6, 12, 14; 7:22, 25; 8:14, 24; 9:1, 17, 23, 25; 10:16; 11:12; 12:5; 13:22, 24; 14:2, 7, 11, 14, 23; 15:10, 17, 19, 24; 16:7, 13, 18, 21; 17:15; 20:20; 21:14; 22:1, 6, 17, 21, 23; 23:2, 16; 24:8, 17; 26:2, 16; 28:11; 29:15; 30:20, 22; 31:3, 15; 32:3, 14; 33:13, 18; 34:7; 35:7, 11, 18; 36:21; 37:1, 11; 38:24
**Titan's** [7] - 35:8, 16; 37:8, 14; 38:12; 39:2, 17
**titled** [2] - 9:18; 14:21
**Tod** [1] - 3:11
**today** [4] - 3:9, 23; 23:20; 33:11
**Todd** [1] - 1:15
**together** [7] - 12:24; 18:23; 32:21; 33:5; 34:2, 5; 39:7
**TOLLIVER** [1] - 1:12
**top** [2] - 9:19; 25:24
**topic** [1] - 11:16
**torts** [1] - 17:2
**total** [5] - 17:4; 38:22; 39:6, 9, 11
**totally** [1] - 31:4
**towards** [2] - 13:12; 39:13
**transcript** [2] - 2:16; 41:5
**TRANSCRIPT** [1] - 1:12
**transcription** [1] - 2:16
**transition** [1] - 13:4
**treinecker@pilieromazza.com** [1] - 1:18
**trial** [7] - 16:18; 36:4; 37:23; 38:15; 39:23; 40:1, 7
**trigger** [3] - 11:22; 21:16; 22:13
**triggered** [1] - 21:12
**trouble** [1] - 12:22
**true** [1] - 21:23
**truly** [2] - 12:25; 22:25
**trump** [1] - 17:20
**try** [3] - 13:4; 14:13
**trying** [6] - 31:16, 20, 24; 32:1, 5, 13
**turn** [1] - 34:23
**turns** [1] - 7:16
**two** [19] - 5:4; 6:6, 8; 9:5; 10:20; 11:24; 12:9; 13:24; 15:18; 26:18; 27:2, 24; 29:13, 18; 33:12; 40:6
**twofold** [1] - 27:15
**type** [2] - 8:25; 35:18

## U

**U.S** [1] - 36:16

**ultimately** [7] - 14:6, 8; 15:9; 29:25; 30:22; 33:4, 10
**unambiguous** [1] - 38:11
**unaware** [1] - 9:1
**under** [28] - 8:19; 9:2; 12:19; 13:22; 15:20; 17:5, 7, 10; 18:3; 19:10; 22:6; 24:14; 27:2; 28:25; 31:18, 22; 32:17, 21; 37:12, 15; 38:2, 16, 22, 25; 39:7, 9, 11
**understood** [2] - 11:19; 20:11
**undisputed** [4] - 16:20; 17:6; 28:3; 37:1
**unique** [1] - 14:5
**United** [5] - 2:13; 5:8, 10, 24; 14:3
**UNITED** [2] - 1:1, 13
**unreasonably** [1] - 7:2
**up** [23] - 5:13, 16, 21; 8:6, 20-21; 9:12; 12:18, 23; 13:15; 21:22; 23:9, 11; 30:3, 15; 31:8; 32:7, 24; 37:23; 39:19; 40:22
**updated** [1] - 26:22
**urged** [1] - 40:10
**uses** [2] - 38:7; 39:5

## V

**VA** [3] - 2:5, 9, 14
**validity** [1] - 37:13
**valuable** [1] - 14:5
**value** [2] - 14:2, 15
**various** [6] - 4:8; 7:24; 8:8, 13, 20; 18:1
**vendor** [3] - 25:8, 12, 14
**verdict** [1] - 34:20
**version** [1] - 18:13
**versus** [1] - 3:3
**Vetovis** [1] - 10:3
**via** [1] - 27:8
**Video** [1] - 17:8
**view** [1] - 21:6
**viewed** [3] - 5:3; 14:4; 20:17
**views** [1] - 27:16
**Virginia** [4] - 6:16; 17:9; 34:25; 38:17
**VIRGINIA** [1] - 1:2
**voice** [2] - 5:13, 16
**volume** [2] - 5:21; 24:12
**volumes** [1] - 20:15

## W

**waived** [1] - 22:21
**waiver** [3] - 9:11; 10:23; 25:5
**waivers** [1] - 38:17
**wakes** [1] - 21:22
**Wallace** [4] - 2:12; 41:5, 7
**Washington** [2] - 1:17, 21
**watch** [1] - 20:1
**Webster** [1] - 39:11
**week** [1] - 13:24

**well-briefed** [2] - 4:11; 19:20
**well-settled** [1] - 34:24
**white** [1] - 6:17
**whole** [5] - 23:7; 34:19; 39:8, 10, 12
**wires** [1] - 26:20
**withdraw** [1] - 16:2
**withdrawing** [2] - 16:4, 6
**withheld** [1] - 7:3
**witnesses** [1] - 33:2
**woman** [1] - 21:21
**word** [2] - 10:13; 38:7
**words** [1] - 39:6
**work/services** [1] - 30:2
**worth** [2] - 14:5; 27:12
**wrap** [1] - 13:15
**writing** [3] - 11:1; 27:8, 22
**written** [9] - 4:19; 7:1; 15:4; 25:18; 26:11; 35:5, 9, 16, 20
**Wu** [3] - 27:7, 14; 31:15

## Y

**year** [1] - 12:18
**yesterday** [1] - 30:8

## Z

**Zero** [49] - 3:4, 16, 19, 21; 4:5, 24; 5:7, 11, 25; 6:3, 6, 12, 14; 7:25; 8:14, 24; 9:1, 18, 23, 25; 10:16; 11:13; 13:22, 24; 14:2, 7, 11, 14, 23; 15:10, 17, 19; 16:7, 13, 18, 21; 17:15; 29:15; 30:21; 31:3, 15; 32:3, 14; 33:13, 18; 34:7, 9
**ZERO** [1] - 1:6
**Zero's** [4] - 7:22; 15:20, 24; 16:19